IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELLEAN NANCE, #B-60068, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-00875-NJR |
| | ) |
| JANE DOE 1, | ) |
| JOHN OR JANE DOE ##2-5 and 7-12 | ) |
| (Menard Doctors or NP's), | ) |
| JOHN DOE #6, | ) |
| MRS. POLLION, | ) |
| MRS. FRUETAS, | ) |
| JOHN OR JANE DOE #13 | ) |
| (Stateville Doctors, PA's or NP's), and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Ellean Nance, an inmate who is currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for the alleged violations of his Eighth Amendment rights at Stateville Correctional Center from 1995-2004 and Menard Correctional Center from 2009-2015 (Doc. 1, pp. 1-42). Plaintiff alleges that he was denied adequate medical care for hepatitis B for years. Instead of properly diagnosing and treating the condition, prison medical staff prescribed Plaintiff ibuprofen and ignored his abnormal blood test results and complaints of pain. He maintains that their ineffective treatment with ibuprofen only exacerbated his condition, resulting in cirrhosis of the liver and enlargement of his spleen (*id.*).

In connection with this claim, Plaintiff now sues the following three known and thirteen unknown defendants: Wexford Health Sources, Inc. (Wexford), Mrs. Pollion (nurse practitioner), Mrs. Fruetas (Asian American doctor), Jane Doe #1 (unknown medical technician), John or Jane

Doe ##2-5 and 7-12 (numerous unknown Menard doctors or nurse practitioners), John Doe #6 (unknown Asian doctor), and John or Jane Doe #13 (numerous unknown Stateville doctors, physician assistants, or nurse practitioners). He seeks monetary relief (*id*. at 42).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## The Complaint

Plaintiff has been in the custody of the Illinois Department of Corrections (IDOC) since 1994.[1] According to the complaint, he received inadequate medical care for hepatitis B at Stateville from 1995-2004 and at Menard from 2009-15 (Doc. 1, pp. 1-42). For years, Plaintiff suffered from right-side stomach pain, discomfort, warmth, and nausea that caused sleeplessness (*id*. at 8). He reported these symptoms to his medical providers at Menard for almost six years before receiving a formal diagnosis. Instead of properly diagnosing and treating the condition, Plaintiff was given pain pills (*i.e.*, ibuprofen) that exacerbated his symptoms and hastened damage to his liver and spleen. As a result, Plaintiff now suffers from cirrhosis of the liver, an enlarged spleen, and a host of purportedly related symptoms. He blames this denial and/or delay

---

[1] *See* https://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx. *See also Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

of proper medical care on Wexford[2] and the medical providers who denied him adequate medical care at both prisons.

According to the complaint, Wexford has collaborated with high-ranking officials in the State of Illinois to create and implement uniform standards for the delivery of health care services at all IDOC facilities (*id*. at 33). These policies allegedly elevate cost concerns over the quality of care provided to state inmates (*id*.). For example, Wexford routinely understaffs prison health care units, leaving key positions unfilled (*id*. at 35). The staffing levels are insufficient to meet the needs of the rising prison population (*id*. at 35-37). Plaintiff points to this policy as the reason for the delay in diagnosis and treatment of his hepatitis.

During his incarceration at Stateville from 1995 until 2004, Plaintiff regularly met with the facility's unknown doctors, physician assistants, and nurse practitioners (collectively John or Jane Doe #13) for annual physicals, asthma check-ups, and scheduled medical clinics (*id*. at 32). During this same time period, he underwent blood tests that revealed abnormal liver function. He alleges that Doe #13 simply ignored the test results (*id*. at 5, 32).

After transferring to Menard, Plaintiff regularly complained to the prison's medical staff about right-side stomach pain, nausea, warmth, and discomfort that caused sleeplessness. Between 2009 and 2015, he met with two known health care providers (*i.e.*, Nurse Practitioner Pollion and Doctor Fruetas) and twelve unknown health care providers (*i.e.*, Jane Doe #1, John or Jane Doe ##2-5 and 7-12, and John Doe #6) at various times to discuss his persistent symptoms.

This includes two appointments in November and December 2009 with an unknown medical technician (Jane Doe #1), who ignored Plaintiff's requests for a referral to see a doctor

---

[2] Wexford is a private medical corporation that staffs the health care units at both prisons.

(*id*. at 9-11). Doe #1 instead responded to Plaintiff's complaints of pain by providing him with ibuprofen and antacid pills. Once the medications ran out, however, his symptoms returned (*id*.).

In 2010, Plaintiff received a pass to visit the hypertension and asthma clinic. While there, he complained to an unknown doctor or nurse practitioner (John or Jane Doe #2) about persistent right-side stomach pain, nausea, warmth, and sleeplessness (*id*. at 11). He explained that the symptoms had been present "for months" (*id*.). Plaintiff also summarized his history of treatment with Doe #1 and his history of abnormal blood tests at Stateville. In response, Doe #2 simply issued Plaintiff more pain pills (*id*. at 12). But after the pills ran out, his symptoms returned.

On or around August 2010, Plaintiff met with another unknown doctor or nurse practitioner (John or Jane Doe #3) for his annual physical (*id*. at 13). Plaintiff summarized his medical history for Doe #3 and explained that the pain pills were ineffective. In response, Doe #3 recommended that Plaintiff "stop exercising for a while" (*id*. at 14).

In late 2010, Plaintiff received another pass to visit the hypertension and asthma clinic. There, he met with yet another unknown doctor or nurse (John or Jane Doe #4) (*id*. at 14-15). After reviewing his history of symptoms, abnormal blood tests, and treatment, Plaintiff was given more pain pills (*id*. at 15).

In 2011, Plaintiff received the same response from still another unknown doctor or nurse (John or Jane Doe #5) at the hypertension and asthma clinic (*id*. at 15-17). Doe #5 simply replenished Plaintiff's supply of pain pills (*id*. at 16).

The same year, Plaintiff complained of unrelenting symptoms to an unknown Asian doctor (John Doe #6) (*id*. at 17). Doe #6 denied Plaintiff's request for a "colon examination," but examined his stomach. After reviewing Plaintiff's medical records, the doctor said, "[Y]ou are

congested, it will pass" (*id*.). Doe #6 then provided Plaintiff with more pain relievers and antacid pills.

On October 7, 2011, Plaintiff filed a grievance to complain about the allegedly inadequate medical care he had received for his ongoing symptoms (*id*. at 17-18). A counselor responded to the grievance by indicating that the "Health Care Unit had seen and address[ed] his medical problem" (*id*. at 17). He submitted the grievance to a grievance officer and received no further response (*id*.).

In late 2011, Plaintiff was seen at the hypertension and asthma clinic by another unknown doctor or nurse practitioner (John or Jane Doe #7) (*id*. at 18-19). Plaintiff again summarized his medical history and explained that he had seen various medical providers about the same symptoms for a period of two years (*id*. at 18). Like the others, Doe #7 simply supplied Plaintiff with more pain pills (*id*.).

At the hypertension and asthma clinic that Plaintiff attended in 2012, still another unknown doctor or nurse practitioner (John or Jane Doe #8) responded to his complaints in the same manner (*id*. at 19-20).

His annual physical that year yielded the same results. After Plaintiff summarized his history of unrelenting symptoms and ineffective treatment that now spanned nearly three years, the unknown doctor or nurse practitioner (John or Jane Doe #9) "just gave him some pain pills" (*id*. at 20-22). Doe #9 added, "[I]t's nothing[.] [Y]ou are congested[;] once you use the stool, you will be ok" (*id*. at 21).

Plaintiff received the same response from an unknown doctor or nurse practitioner (John or Jane Doe #10) at the hypertension and asthma clinic in the fall of 2012 (*id*. at 22)-- more pills.

Twice in 2013, Plaintiff met with Nurse Practitioner Pollion (*id*. at 23-25). When he complained of stomach pain, warmth, and discomfort at the hypertension and asthma clinic, she cut him off, saying, "[W]e are not here for that" (*id*. at 23). Plaintiff insisted that the pain pills were not working, to which Nurse Practitioner responded, "[W]e are here for [the] [h]ypertension or [a]sthma clinic" (*id*.). The nurse practitioner still gave Plaintiff pain pills (*id*.). During his annual physical later the same year, Nurse Practitioner Pollion examined Plaintiff's "stomach area, reviewed the medical records and proceeded with [a] colon examination" (*id*. at 24). When she provided Plaintiff with another round of pain pills, he protested. Plaintiff again insisted that the pain pills were not working. The nurse said, "I know that" (*id*.).

Also in 2013, Plaintiff complained to a second unknown doctor or nurse practitioner (John or Jane Doe #11) during the hypertension and asthma clinic (*id*. at 25-26). Doe #11 also cut him off, when Plaintiff pleaded for different, more effective medical care.

At the clinic in 2014, an unknown doctor or nurse practitioner (John of Jane Doe #12) reviewed Plaintiff's medical records, in response to his complaints (*id*. at 27). Doe #12 noted that Plaintiff's "blood test result[s] over the years show [a] high liver reading" (*id*.). This shocked Plaintiff, who, for years, had suffered from and reported the same symptoms to each of his medical providers.[3] Doe #12 supplied him with another round of pain pills (*i.e.*, ibuprofen), but instructed him not to take more than two pills per day (*id*.).

Later that year, Plaintiff met with Doctor Fruetas in the hypertension and asthma clinic (*id*. at 28). Plaintiff told the doctor that something was wrong with his liver. He again described the symptoms that he had experienced for more than five years. It was then that Doctor Fruetas told Plaintiff, "[Y]ou have Hep B disease" (*id*.). When Plaintiff asked the doctor if hepatitis B

---

[3] It is unclear from this allegation whether Plaintiff learned, for the first time, of his abnormal blood test results during this appointment. Elsewhere in his complaint, Plaintiff alleges that he reported these abnormal results to his medical providers at each appointment.

was causing his symptoms, the doctor said that it was "possible" (*id.*). When Plaintiff asked the doctor how he could have contracted the disease, the doctor told him not to worry about it. At that, he was given more pain pills (*id.*). The doctor later assured Plaintiff that he did not have hepatitis C, which the doctor considered more serious than hepatitis B (*id.* at 29-30).

In May 2015, Plaintiff met with Nurse Anna Schott[4] to discuss his hepatitis B. When Plaintiff began describing the history of his symptoms and treatment, Nurse Schott informed him that one of his "test[s] shows liver scarring" and a slightly enlarged spleen (*id.* at 31). When Plaintiff pressed the nurse for more information, she told him not to worry about it because she would refer him to a liver specialist. For the first time, Plaintiff was not given any ibuprofen (*id.*).

Plaintiff met with Doctor Chen,[5] a liver specialist from the University of Illinois -- Chicago, by videoconference on an undisclosed date. The liver specialist confirmed that he had "liver scarring" but assured Plaintiff that his lab tests were normal. The doctor also advised Plaintiff that he would continue to monitor Plaintiff's liver. When Plaintiff asked the doctor whether he was at risk of developing cancer, the doctor stated that there was "a chance" because of the cirrhosis and his race.[6] For the second time, Plaintiff was not given any pain pills (*id.*).

In connection with the events described above, Plaintiff now sues Wexford, Nurse Practitioner Pollion, Doctor Fruetas, and John or Jane Does ##1-13 for denying him

---

[4] Plaintiff did not name this individual as a defendant in the caption of the complaint. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").
[5] This individual is also not named as a defendant in the case caption, and any claims against Doctor Chen are considered dismissed without prejudice from this action. *See id.*
[6] Plaintiff is African American.

adequate medical care for his hepatitis B, in violation of the Eighth Amendment. He seeks monetary relief (*id*. at 42).

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claim in Plaintiff's *pro se* complaint into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court:

> Count 1: Eighth Amendment deliberate indifference to medical needs claim against Defendants John or Jane Doe #13 (unknown Stateville doctors, physician assistants, and/or nurse practitioners) for delaying or denying Plaintiff adequate medical care for his hepatitis B between 1995 and 2004.
>
> Count 2: Eighth Amendment deliberate indifference to medical needs claim against Nurse Pollion, Doctor Fruetas, Jane Doe #1 (medical technician), John or Jane Doe ##2-5 and 7-12 (unknown doctors or nurse practitioners), and John Doe #6 (unknown Asian doctor) for delaying the diagnosis and treatment of Plaintiff's hepatitis B at Menard between 2009 and 2015.
>
> Count 3: Eighth Amendment deliberate indifference to medical needs claim against Wexford for instituting a cost-saving policy of understaffing IDOC facilities in a manner that delayed the proper diagnosis and treatment of Plaintiff's hepatitis B and related symptoms.

As discussed in more detail below, **Count 1** shall be dismissed for failure to state a claim upon which relief may be granted. However, **Counts 2** and **3** survive preliminary review and shall proceed against the defendants named in connection with each claim above.

The Eighth Amendment "imposes a duty on government officials to provide medical care to prisoners." *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (citing *Estelle v. Gamble*,

429 U.S. 97, 104-05 (1976)). Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104). An Eighth Amendment claim based on the denial of medical care consists of two components. The objective component requires a plaintiff to demonstrate that he suffered from a sufficiently serious medical need. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)). The subjective component requires the plaintiff to show that each defendant responded to his serious medical need with deliberate indifference. *Id*.

With regard to the objective component of this claim, the Seventh Circuit has made it clear that chronic, degenerative conditions are no less serious than acute problems. *See McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016). These conditions include hepatitis. *Id*. (citing *Roe v. Elyea*, 631 F.3d 843, 861-62 (7th Cir. 2011)). Such conditions "may escalate and have significant future repercussions unless adequately treated." *Id*. at 889. Although Plaintiff was not diagnosed with hepatitis B until 2014, the allegations suggest that the condition presented a serious medical need long before he received a formal diagnosis. Plaintiff began complaining of the same unrelenting symptoms five years earlier in 2009, many years after blood test results showed abnormal liver function. For screening purposes, the allegations satisfy the objective component of this claim.

But more is required to support Plaintiff's Eighth Amendment claim against each of the defendants. The allegations must also suggest that each defendant responded to Plaintiff's serious medical needs with deliberate indifference. A prison official acts with deliberate indifference when he or she "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 411 F.3d at 653. Neither "medical malpractice nor mere disagreement with a doctor's

medical judgment" is sufficient to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). At the same time, a prisoner is also "not required to show that he was literally ignored." *Berry*, 604 F.3d at 441 (citing *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). Persisting in a course of treatment "known to be ineffective" violates the Eighth Amendment. *Greeno*, 414 F.3d at 655; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("[M]edical personnel cannot simply resort to an easier course of treatment that they know is ineffective."). And, in the context of chronic health conditions, medical providers are not excused from providing inmates adequate treatment "simply because any resulting harms may remain latent or have not reached the point of causing acute or life-threatening injuries." *McDonald*, 821 F.3d at 889. With this in mind, the Court will consider whether the conduct of each defendant, or group of defendants, constituted deliberate indifference.

### Count 1 - Stateville Defendants

The allegations against Doe #13 are far too conclusory and threadbare to support a claim of deliberate indifference, even at this early stage. Plaintiff sues all doctors, physician assistants, and nurse practitioners at Stateville who treated him during a ten-year period. However, he offers no allegations suggesting that any particular defendant knew about his abnormal blood test results, his hepatitis B, or the symptoms that he complained of years later at Menard. Absent allegations to this effect, the Court can discern no possible -- let alone plausible -- basis for a claim against any particular Stateville defendant.

In order to support a claim for individual liability under § 1983, the complaint must allege that the defendant was personally responsible for the deprivation of a constitutional right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State Police*, 251 F.3d

612, 651-52 (7th Cir. 2001)). Conclusory allegations to this effect do not satisfy the *Twombly* standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544 (2007) (courts are not required to assume that conclusory allegations are true, even early in litigation)). Plaintiff offers no other allegations suggesting that any particular Stateville defendant was aware of Plaintiff's symptoms or his abnormal blood test results and refused to conduct further diagnostic testing or provide adequate care. Even at this early stage, Plaintiff has not nudged his claims against Doe #13 "across the line from conceivable to plausible." *Id.* at 680. Accordingly, Count 1 shall be dismissed without prejudice against Doe #13 for failure to state a claim upon which relief may be granted.

### Count 2 – Menard Defendants

The Court will allow Plaintiff to proceed with his Eighth Amendment claim in Count 2 against Mrs. Pollion (nurse practitioner), Mrs. Fruetas (Asian American doctor), Jane Doe #1 (unknown medical technician), John or Jane Doe ##2-5 and 7-12 (numerous unknown Menard doctors or nurse practitioners), and John Doe #6 (unknown Asian doctor). Although each of the medical providers allegedly met with Plaintiff to discuss his symptoms only once or twice, Plaintiff alleges that he informed all of them about his history of failed treatment with ibuprofen, his persistent symptoms, and his abnormal blood test results. Even after making each defendant aware of his situation, the defendants consistently responded to his requests for medical treatment by offering him the same pain pills that they knew would not help. This chosen course of treatment, at best, did nothing and, at worst, hastened the damage to Plaintiff's liver and spleen. Either way, the Court cannot dismiss Count 2 against these defendants at this stage. *But see Andreyev v. Kjorlie*, 455 F. App'x. 693, 695-96 (7th Cir. 2011) (no deliberate indifference shown where inmate was denied toothbrush and toothpaste for thirty-one days by

sixteen defendants, but denial of items did not impact the trajectory of his periodontal disease). *See also Dale v. Poston*, 548 F.3d 563, 571 (7th Cir. 2008); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

### Count 3 - Wexford

Finally, the Court also will allow Plaintiff to proceed with his Eighth Amendment claim in Count 3 against Wexford. Plaintiff's claims against this defendant arise from Wexford's alleged policy, custom, or widespread practice of understaffing Menard's health care unit which, in turn, resulted in the alleged delay or denial of medical care for Plaintiff's hepatitis B. Generally, a private corporation cannot be held liable under § 1983 "unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself [because] [r]espondeat superior liability does not apply to private corporations under § 1983." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). In this case, Plaintiff alleges that Wexford's policy of understaffing Menard's health care unit delayed his diagnosis and treatment, prolonged his pain, and exacerbated his condition. Given the allegations against Wexford, the Court also cannot dismiss Count 3.

### Identification of Unknown Defendants

Plaintiff will be allowed to proceed with Count 2 against the following unknown Menard defendants: Jane Doe #1 (medical technician), John or Jane Doe ##2-5 and 7-12 (doctors or nurse practitioners), and John Doe #6 (Asian doctor). However, these parties must be identified with particularity before service of the complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim but the names of those defendants are not known, the

prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Menard's current warden shall be added as a party to this action, in his or her official capacity only, for purposes of responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unknown defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the complaint.

## Pending Motion

Plaintiff filed a motion to appoint counsel (Doc. 2), which shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

## Disposition

The Clerk is **DIRECTED** to **ADD** the **WARDEN of MENARD CORRECTIONAL CENTER (in his or her official capacity only)** as a defendant, for the sole purpose of responding to discovery aimed at identifying the unknown defendants in this action with specificity.

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice against Defendant **JOHN DOE #13 (Stateville Doctors, Physician Assistants, and/or Nurse Practitioners)** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** is subject to further review against the following Menard Defendants: **JANE DOE #1 (medical technician), JOHN OR JANE DOE ##2-5 and 7-12 (doctors or nurse practitioners), JOHN DOE #6 (Asian doctor), MRS. POLLION,** and

**MRS. FRUETAS**, and **COUNT 3** is subject to further review against Defendant **WEXFORD HEALTH SOURCES, INC.**

With regard to **COUNTS 2** and **3**, the Clerk shall prepare for Defendants **MRS. POLLION, MRS. FRUETAS, WEXFORD HEALTH SOURCES, INC.,** and the **WARDEN of MENARD CORRECTIONAL CENTER (in his or her official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Service shall not be made on the Unknown Menard Defendants **JANE DOE #1** (medical technician), **JOHN OR JANE DOE ##2-5 AND 7-12** (doctors or nurse practitioners), and **JOHN DOE #6** (Asian doctor) until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the motion to appoint counsel (Doc. 2) and a plan for discovery aimed at identifying the unknown defendants, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 7, 2016**

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**