# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ELLEAN NANCE, #B60068, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:16-cv-00875-NJR-MAB |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| WARDEN OF MENARD | ) | |
| CORRECTIONAL CENTER, JOHN R. | ) | |
| BALDWIN, SALVADOR GODINEZ, | ) | |
| STEVE MEEKS, JACQUELINE | ) | |
| LASHBROOK, JOHN TROST, M.D., | ) | |
| RONALD SKIDMORE, ANNA L. | ) | |
| SCHOTT, FE FUENTES,  KIMBERLY | ) | |
| BUTLER, RASHIDA POLLION, ADRIAN | ) | |
| FEINERMAN, ROBERT SHEARING, | ) | |
| JOHN SHEPHERD, SAMUEL | ) | |
| NWAOBASI, MAGID FAHIM, and | ) | |
| ANGEL RECTOR | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS (DKT. 194, 195)

## TABLE OF CONTENTS

**Page**

I.  BACKGROUND ................................................................................................ 3

    A.  The Factual Allegations In Mr. Nance's Complaint ................................... 3

    B.  Procedural History .................................................................................. 4

II.  APPLICABLE LEGAL STANDARDS ............................................................ 5

    A.  Motion To Dismiss .................................................................................. 5

    B.  Statute of Limitations ............................................................................. 6

    C.  Relation Back To Original Complaint ...................................................... 7

III.  ARGUMENT ................................................................................................... 7

    A.  Mr. Nance's Claims Are Not Time-Barred Because The Statute Of
        Limitations Did Not Begin To Accrue Until Mr. Nance Knew Who
        Caused His Injury. ................................................................................... 7

    B.  Mr. Nance's Claims Are Not Time-Barred Because The Statute Of
        Limitations Did Not Begin To Accrue Before Mr. Nance Knew Of His
        Injury In 2015 And His FAC Relates Back To The 2016 Original
        Complaint ................................................................................................ 9

        1.  The Statute of Limitations Did Not Begin to Accrue Before Mr.
            Nance Knew Of His Injury In 2015. ............................................. 9

        2.  Plaintiff's Claims Against Rashida Pollion Were Timely. ...................... 13

        3.  Plaintiff's Claims Against The Newly Added Defendants Relate
            Back To The August 2016 Original Complaint. ........................................ 14

        4.  Defendants Knew Or Should Have Known That, But For A
            Mistake, The Action Would Have Been Brought Against Them. ............ 14

        5.  Defendants Received Notice Of This Action Such That They
            Would Not Be Prejudiced. ....................................................................... 16

    C.  The FAC States a Claim Against Defendants Shepherd And Rector. .................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado v. Litscher,*
    267 F.3d 648 (7th Cir. 2001) ....................................................5

*Andreyev v. Kjorlie,*
    455 F. App'x 693 (7th Cir. 2011) ...........................................19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................5, 6

*Brooks v. Ross,*
    578 F.3d 574 (7th Cir. 2009) ....................................................6

*Covington v. Mitsubishi Motor Mfg. of Am., Inc.,*
    154 F. App'x 523 (7th Cir. 2005) ...........................................14

*Devbrow v. Kalu,*
    705 F.3d 765 (7th Cir. 2013) ...........................................*passim*

*Donald v. Cook Cty. Sheriff's Dep't,*
    95 F.3d 548 (7th Cir. 1996) ...................................................2, 9

*Givens v. Luedtke,*
    587 F. App'x 979 (7th Cir. 2014) .......................................11, 12

*Goodhand v. United States,*
    40 F.3d 209 (7th Cir. 1994) .............................................*passim*

*Grede v. MBF Clearing Corp.,*
    No. 09 C 5214, 2018 WL 306668 (N.D. Ill. Jan. 5, 2018) ....................18

*Harrington v. Sones,*
    No. 3:16-CV-48-RJD, 2018 WL 999121 (S.D. Ill. Feb. 21, 2018) ............8

*Hatmaker v. Memorial Medical Center,*
    619 F.3d 741 (7th Cir. 2010) ....................................................6

*Johnson v. Rivera,*
    272 F.3d 519 (7th Cir. 2001) ....................................................8

*Kalimara v. Illinois Dep't of Corr.*,
  879 F.2d 276 (7th Cir. 1989) ................................................6

*Klinger v. City of Chicago*,
  No. 15-CV-1609, 2017 WL 736895 (N.D. Ill. Feb. 24, 2017) ................................16

*Krupski v. Costa Crociere S.p.A.*,
  560 U.S. 538 (2010)................................................15

*Liebich v. Hardy*,
  2013 WL 4476132 (N.D. Ill. Aug. 19, 2013) ................................................3

*Moore v. State of Ind.*,
  999 F.2d 1125 (7th Cir. 1993) ................................................7, 8

*In re Safeco Ins. Co. of Am.*,
  585 F.3d 326 (7th Cir. 2009) ................................................7, 14

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ................................................6

*In re THR & Assocs., Inc.*,
  No. 12-72022, 2016 WL 3134653 (Bankr. C.D. Ill. May 26, 2016) ................................18

*White v. City of Chicago*,
  No. 14 CV 3720, 2016 WL 4270152 (N.D. Ill. Aug. 15, 2016) ................................16

## INTRODUCTION

In his original *pro se* Complaint, Mr. Nance asserted claims against doctors and nurses who saw him in prison and described those doctors' and nurses' failure to treat his symptoms and diagnose them as hepatitis B, allowing the disease to progress to cirrhosis of the liver.  He named them as Doe Defendants because of his limited access to his medical records—medical records created by the Doe Defendants and accessible to their employer, co-Defendant Wexford.  With the benefit of discovery, and as instructed by the Court, Mr. Nance named certain of the Doe Defendants as Angel Rector, Dr. Feinerman, Dr. Fahim, Dr. Shepherd, and Dr. Shearing in his Fourth Amended Complaint (FAC), also prepared *pro se*.[1]

The five newly added Defendants argue that Mr. Nance's claims against them are barred by the statute of limitations.  Not so.  Mr. Nance's claims against the newly added Defendants are timely for three independent reasons:  ***First***, the two-year limitations period for Mr. Nance's deliberate indifferent claims "does not begin any *earlier* than the date on which the plaintiff knows of his physical injury and its cause."  *Devbrow v. Kalu*, 705 F.3d 765, 769 (7th Cir. 2013) (emphasis in original).  More specifically, the limitations period does not accrue "[e]ven if he knows that he has been injured, ***if he does not know who*** … inflicted the injury[.]"  *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994) (emphasis added).  Here—unable to access the necessary records—Mr. Nance was not able to determine ***who*** the newly added Defendants were until early 2018.  The September 2018 FAC itself was thus within the limitations period.

***Second,*** at the very least, Mr. Nance's claims could not begin to accrue until he learned of his injury—cirrhosis—and its cause—Defendants' deliberate indifference in failing to properly

---

[1]    Dkt. 159 is entitled "Plaintiff's Proposed Third Amended Complaint," but Plaintiff refers to it herein as the "Fourth Amended Complaint" or "FAC" in accordance with the Court's order granting leave to file it.  (Dkt. 154 at 1 n.1.)

diagnose and treat him.  *Devbrow*, 705 F.3d at 768.  It was not until May 2015 when Mr. Nance was told that his untreated hepatitis had caused him to develop cirrhosis of the liver and increased risk of liver cancer.  (Dkt. 1, Compl. at 31.)  The original August 3, 2016 Complaint, filed just over one year later, was timely.  The timeliness of the original Complaint also defeats the argument from Rashida Pollion, a Defendant from the original Complaint, that the claims against her are time-barred as well.  And, the claims against the newly added Defendants are timely through the rule of relation back.  Defendants ***merely assert*** that the original Complaint fails to satisfy the notice and knowledge prongs of the relation back statutes.  Defendants cite no cases supporting their positions and attach no evidence or supporting declarations.  They fail to address decisions from other Illinois courts finding that once you "assum[e] the truth of Plaintiff's allegations," a newly named defendant "knew or at least should have known that plaintiff meant to sue him" when he "was the person who" injured the plaintiff as alleged.  *See, e.g.*, *Zlatev v. Millette*, 43 N.E.3d 153, 160, ¶ 34 (Ill. App. 1 Dist., 2015); *accord Klinger v. City of Chicago*, No. 15-CV-1609, 2017 WL 736895 (N.D. Ill. Feb. 24, 2017).  Under those cases Mr. Nance's FAC relates back.

And ***third***, even if the statute of limitations had begun to run before he knew who injured him—and for the reasons already discussed, it would not have—it would have been tolled under the doctrine of equitable estoppel until he knew their names.  This is because during that time, Mr. Nance was "unable despite all reasonable diligence to learn ... the wrongdoer's identity.'"  *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 562 (7th Cir. 1996).

Finally, Defendants Shepherd and and Rector argue the FAC does not set forth facts sufficient to state a claim against them.  These arguments also fail.  Dr. Shepherd ordered test results that "showed levels outside [of] refer[]ence range[s]," which along with Mr. Nance's symptoms of "pain, warmness, [and] discomfort" in his abdomen, were "indicators of potential

[hepatitis B].”   (FAC at 26-27.)   Despite these warning signs, Dr. Shepherd “took no further

action.”   (*Id.* at 27.)   Where a complaint alleges that a doctor “ignored abnormal tests results” and

“ignored [plaintiff’s] symptoms and pain,” a basis for a claim of deliberate indifference has been

stated.   *Liebich v. Hardy*, 2013 WL 4476132, at *6 (N.D. Ill. Aug. 19, 2013).   Similarly, Mr. Nance

alleges that Ms. Rector responded to what she knew was a probable hepatitis diagnosis by

prescribing an actively harmful treatment, one that “can cause inflammation in the liver.”   (FAC

at 31.)   Those allegations defeat Defendant Rector’s motion, because “[d]eliberate indifference …

can be manifested by blatantly inappropriate treatment.”   *Liebich*, at *5.

## I.      **BACKGROUND**

### A.      **The Factual Allegations In Mr. Nance’s Complaint**

Plaintiff Ellean Nance is an inmate in the custody of the Illinois Department of Corrections.

Mr. Nance was housed in the Stateville Correctional Center from 1995 to 2004, at which point he

was transferred to Menard Correctional Center.   (Compl. at 5.)   In November 2009, Mr. Nance

began to experience pain and warmth on the right side of his stomach.   (Compl. at 9.)   He submitted

a request to see a doctor, and was seen by a medical technician who told him to take ibuprofen and

antacid pills.   (*Id.*)   Mr. Nance took the pills, but when he ran out, his symptoms returned.   (*Id.*)

Over the next five years, Mr. Nance alerted a series of doctors and nurses to his recurring

symptoms.   (Compl. at 11-34.)   Each of these professionals had access to Mr. Nance’s medical

records, including urinalysis and blood test results that showed abnormalities consistent with

hepatitis.   (*E.g.*, Compl. at 8, 12, 14-15, 17-18, 20-24, 27, 32; FAC at 15-21, 26-32.)   To each he

described symptoms consistent with hepatitis.   (*Id.*)   Yet Mr. Nance was not treated for hepatitis.

Instead, he was told that he was experiencing the effects of over-exercising or “congest[ion],” and

given ibuprofen—a drug which should not be given to hepatitis patients and can damage hepatitis

patients’ already susceptible livers.   (*E.g.*, Compl. at 13-14, 17.)   Years later, in May 2014,

Defendant Rector finally ordered a hepatitis panel for Mr. Nance.  (FAC at 31.)  Despite acknowledging that hepatitis was indicated, Defendant Rector prescribed more ibuprofen.  (*Id*.)

Mr. Nance did not learn of the results of this test—his diagnosis with hepatitis B—until he was informed by Defendant Fuentes (*id*. at 12), whom he did not see until August 6, 2014 (*id*. at 24).  And it was not until a year later, ***in May 2015***, that Mr. Nance was informed that he had cirrhosis of the liver due to his untreated hepatitis and that the inflammation would increase his risk of liver cancer.  (Compl. at 31, Ex. K (Dkt. 1-3) at 41.)

In January 2016, Mr. Nance filed emergency grievances seeking medical care for this condition.  (Compl., Ex. B (Dkt. 1-1) at 20   (grievance form noting two prior "emergency grievances [filed on] 1-10-16 and 1-25-16").)  After the Warden and Grievance Officer claimed the grievance had been addressed, Mr. Nance appealed.  (*Id*. at 19.)  The Administrative Review Board issued a similar claim on March 9, 2016, exhausting the administrative process.  (*Id*.)

## B.    Procedural History

Mr. Nance filed the original Complaint on August 3, 2016.  Mr. Nance's *pro se* original Complaint stated claims for deliberate indifference under 42 U.S.C. § 1983 relating to the Defendants' failure to properly diagnose and treat Mr. Nance's hepatitis and cirrhosis despite access to his test results and knowledge of his recurrent symptoms.  The original Complaint did not identify several Defendants by name, and instead identified them as "Doe" Defendants, because Mr. Nance lacked access to the medical records that contained the names and other information necessary to identify the Defendants with more specificity.  (Compl. at 13 n.3.)

He represented himself until the Court appointed him counsel in December 2016, and then again from approximately November 2017 to September 2018 after Mr. Nance determined that his previous counsel had made insufficient progress in attempting to discover the names of the Doe defendants and asked that they withdraw.  (Dkt. 98.)  In May 2018, after receiving discovery of

his medical records, Mr. Nance filed a *pro se* motion for leave to file what ended up being his Fourth Amended Complaint, and submitted the proposed FAC to the Clerk.  (Dkt. 143; *see* Dkt. 144 ¶ 7.)  The *pro se* FAC, entered with the Court's leave on September 13, 2018, states the same § 1983 claims and is based on the same conduct identified in the original Complaint—Defendants' failure to properly diagnose and treat Mr. Nance's hepatitis and cirrhosis despite access to his test results and knowledge of his recurrent symptoms—but replaces the Doe Defendants with named Defendants.  (*E.g.*, FAC at 8-10, 15-21, 26-32.)[2]

## II.   APPLICABLE LEGAL STANDARDS

### A.   Motion To Dismiss

A motion under Rule 12(b)(6) asks a court to dismiss a case at its inception, without discovery and without requiring an answer.  When ruling on a motion to dismiss, all factual allegations are taken as true and reasonable inferences are viewed in the light most favorable to the non-moving party.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (must be "above the speculative level").  However, "[a]llegations of a pro se complaint" such as the complaint being challenged in the present motion "are held 'to less stringent standards than formal pleadings drafted by lawyers'" and are "[a]ccordingly … liberally construed."  *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

Rule 8 requires only that a complaint provide the basis for the court's jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for

---

[2]     The FAC contained a claim for intentional infliction of emotional distress (IIED) as well. Defendants do not mention the IIED claim in their brief and do not say that it is subject to the motion to dismiss.  To the extent Defendants are permitted to argue that IIED claim should be dismissed as well, in reply or otherwise, Plaintiff reserves the right to respond.

the relief sought." Fed. R. Civ. P. 8(a). The purpose of that rule is to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Thus, a complaint is "not required to plead legal theories." *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010). Nor must a complaint lay out a plaintiff's proof. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### B. Statute of Limitations

The applicable statute of limitations period for claims under § 1983 is the "state period for personal injury torts," which is two years under Illinois law. 735 ILCS 5/13-202; *Kalimara v. Illinois Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989). "Accrual rules, however, are governed by federal law 'conforming in general to common-law tort principles.'" *Devbrow*, 705 F.3d at 767. "[W]e use the rule that applies to the common-law cause of action most similar to the kind of claim the plaintiff asserts." *Id.* "The tort claim most closely analogous to a deliberate-indifference claim premised on a medical error is medical malpractice." *Id.* at 768.

Under applicable federal law, the statute of limitations "does not begin any *earlier* than the date on which the plaintiff **knows of his physical injury and its cause**." *Id.* at 769 (emphasis in original). "Until the plaintiff knows that he has been injured *and by whom* or by what, he has no reason to take steps to determine whether he might have a legal claim.… Even if he knows that he has been injured, *if he does not know who* or what inflicted the injury, he again has no reason to suppose that he might have a legal claim against someone." *Goodhand*, 40 F.3d at 212. The statute of limitations may begin even later in cases "involving an injury that 'seems trivial, and only much later is it discovered to be serious enough to warrant the expense of a precomplaint investigation.'" *Devbrow*, 705 F.3d at 768.

"[T]he submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion." *Moore v. State of Ind.*, 999 F.2d 1125, 1131 (7th Cir. 1993).

### C.      Relation Back To Original Complaint

Federal Rule of Civil Procedure 15 governs the relation back of claims asserted in amended complaints.  An amended complaint relates back to an original pleading when the requirements of FRCP 15(c)(1)(C)—discussed below—are met.   Alternatively, it relates back under FRCP 15(c)(1)(A) when permitted by "the applicable statute of limitations," *i.e.*, Illinois state law. Illinois law on relation back, 735 ILCS 5/2-616, closely tracks FRCP 15 and the Seventh Circuit has held that it is "in all material respects, identical to the federal rule." *In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009).

Thus for relation back, both Illinois law and FRCP 15(c)(1)(C) require: (1) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; (2) the newly added defendant "received such notice of the action that it will not be prejudiced in defending on the merits" within the time for service; and (3) the newly added defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C); 735 ILCS 5/2-616(d).

## III.   <u>ARGUMENT</u>

### A.      **Mr. Nance's Claims Are Not Time-Barred Because The Statute Of Limitations Did Not Begin To Accrue Until Mr. Nance Knew Who Caused His Injury.**

Mr. Nance did not know *who* had caused his liver cirrhosis injury until the spring of 2018.  He explained in his August 2016 Complaint that he was unable to identify the names and

other identifying details of the nurses and doctors who treated him because he did not have access to his medical records. (Compl. at 11 n.2.) Without these records, Mr. Nance was unable to identify the complete "cause" of his injury, i.e. the complete list of health care professionals who knew or should have known of Mr. Nance's serious medical needs and who disregarded those needs. Defendants ***do not even argue*** that Mr. Nance knew enough to allege, prior to obtaining the medical records, that the newly added Defendants Feinerman, Rector, Fahim, Shepherd and Shearing caused his cirrhosis.

Mr. Nance obtained his medical records after filing his August 3, 2016 original Complaint. He therefore necessarily obtained the requisite knowledge less than two years before the relevant May 17, 2018 filing of his motion for leave to file the FAC, which was submitted with the proposed FAC. *Moore*, 999 F.2d at 1131 (filing of leave to amend tolls the statute of limitations).[3] Mr. Nance's claims therefore are not time-barred. *Goodhand*, 40 F.3d at 212.

Indeed, by November 2017 Mr. Nance still did not have access to the information he needed. (Dkt. 100.) On November 13, 2017, he was forced to file a *pro se* motion for discovery of the names of the Doe Defendants. (*Id*.) The Court granted Mr. Nance's motion a month later and ordered the Warden of Menard Correctional Center to provide the names of the Defendants by January 12, 2018. (Dkt. 112, 113.) Only after that was Mr. Nance able to identify the newly named Defendants. (Dkt. 125 at 2.) Thus, it was not until early 2018—just months before he filed his motion for leave to file his FAC—that Mr. Nance knew "***who*** … inflicted the injury" for which

---

[3] Not only that, but "in a § 1983 case," the court "must toll the limitations period while a prisoner completes the administrative grievance process." *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Documents attached to the complaints evidence that the grievance process lasted at least 2 months, from the filing on January 10 until receipt of the Board's response on March 9, 2016. (Compl., Ex. B (Dkt. 1-1) at 19-20); *see, e.g.*, *Harrington v. Sones*, No. 3:16-CV-48-RJD, 2018 WL 999121, at *4 (S.D. Ill. Feb. 21, 2018). Accordingly, two months must be added to the limitations period to account for the grievance process.

he was seeking redress.  *Goodhand*, 40 F.3d at 212.

Alternatively, Defendants' motion to dismiss also should be denied under equitable tolling rules.  "Application of the [equitable tolling] doctrine is appropriate, for example, when a plaintiff has 'been injured and known he was injured, at which point the statute of limitations began to run, yet have been unable despite all reasonable diligence to learn ... the wrongdoer's identity.'"  *Donald*, 95 F.3d at 562 (remanding dismissal and motion for relief from judgment to consider whether equitable tolling applied).  Here, Mr. Nance diligently sought to identify the Doe Defendants, but was stymied by a distinct lack of information, even after receiving partial medical records.  (Dkt. 100.)  Rightly unsatisfied with the lack of information, Mr. Nance filed a *pro se* motion for discovery of the Defendants' names.  (*Id.*)  As the Seventh Circuit observed in *Donald*, "[t]he present case may well be an appropriate instance for the equitable tolling of the statute of limitations with respect to the individual defendants" because "[Nance], unrepresented and incarcerated, was unable to identify the [medical professionals] directly involved in the incidents leading up to his [cirrhosis] without the aid of the tools of discovery or a court-ordered disclosure of their identities."  *Donald*, 95 F.3d at 562.

**B.    Mr. Nance's Claims Are Not Time-Barred Because The Statute Of Limitations Did Not Begin To Accrue Before Mr. Nance Knew Of His Injury In 2015 And His FAC Relates Back To The 2016 Original Complaint.**

Even incorrectly assuming that the statute of limitations began to accrue before Mr. Nance obtained his medical records in early 2018, the motion to dismiss should be denied for another, independent reason.  The two-year statute of limitations could not have begun to accrue before Mr. Nance knew of his ***injury*** in May 2015, the original Complaint was timely filed only one year later in August 2016, and the FAC relates back to the original Complaint.

**1.    *The Statute of Limitations Did Not Begin to Accrue Before Mr. Nance Knew Of His Injury In 2015.***

At the very least, the statute of limitations period can start no earlier than the date on which Ellean Nance knew of his "physical injury." *Devbrow*, 705 F.3d 768. Mr. Nance did not know of his cirrhosis—his "irreversible injury" to his liver with "increased risk" for cancer—until May 2015. (Compl. at 8, 31.) The cause of that injury was Defendants' repeated failure over several years to diagnose Mr. Nance's hepatitis and treat it, despite clear warning signs that Mr. Nance was carrying the disease in the form of lab tests and abdominal pain. (*Id*. at 8 ("Despite the Defendant's knowledge of years of complaining of pain … [and] abnormal blood test results [they] ignored or disregarded [his] serious medical problem … [t]hus, resulting in liver cirrhosis and enlarge[d] spleen."); *see also, e.g.*, *id*. at 42 (similar); FAC at 9-10 ("Plaintiff did not receive adequate, appropriate or proper medical care and treatment of HBV, and as a result thereof, has suffered scarring and Cirrhosis of his liver ").)

This case closely parallels *Devbrow v. Kalu*. In *Devbrow*, the plaintiff entered prison with the knowledge that he had prostate problems and was at a high risk of cancer. 705 F.3d at 766. He informed the prison medical staff of this issue and that he would need to be tested for prostate cancer within two to four years. *Id*. The prison medical staff nevertheless delayed ordering a biopsy. *Id*. Eventually, following a biopsy, the plaintiff learned that he had cancer. *Id*. Follow-up testing conducted months later revealed the disease had spread to his spine, and that his treatment options were therefore "severely limited." *Id*.; *see also id*. at 767. As the Seventh Circuit explained, "the relevant injury for statute-of-limitations purposes is … the physical injury caused by the defendants' indifference to the prisoner's medical needs." *Id*. at 768. Because the plaintiff's allegation was that the "defendants' deliberate indifference delayed the diagnosis of his cancer until after it had metastasized," the Court reasoned that his claim could not begin to accrue until he learned of ***that*** injury, either "when he received the cancer diagnosis" or, "perhaps as late" as

10

when he "learned of the metastasis." *Id*. at 769.

As in *Devbrow*, Mr. Nance's claim is that the Defendants' deliberate indifference delayed the diagnosis of his hepatitis until it had progressed to a more serious condition, cirrhosis of the liver. Accordingly, the very earliest his claim could have accrued was when he received his hepatitis diagnosis on August 6, 2014 (FAC at 12, 24 (first saw Fuentes on August 6, 2014)), and the better conclusion is that statute of limitations did not accrue until after he learned of the resulting cirrhosis, in May 2015 (*Compl.* at Ex. K (Dkt. 1-3 at 41)). Mr. Nance filed his original Complaint on August 3, 2016. Using either date, and even before accounting for any tolling, Mr. Nance filed his complaint within the two-year limitations period. 735 ILCS 5/13-202.

Defendants argue that the Seventh Circuit "clarified its holding in" *Devbrow* in *Givens v. Luedtke*, 587 F. App'x 979 (7th Cir. 2014) to "explicitly reject[] the argument that the statute of limitations does not run until plaintiff knows the diagnosis and cause for his symptoms." (Br. at 6-7.) This misstates *Givens*, which is inapplicable here. *Givens'* case arose from a series of interactions with one prison dentist. 587 F. App'x at 979. The dentist performed a root canal on one of Givens' teeth. *Id*. A week later, Givens returned to have the dentist examine a lesion that had appeared on the roof of his mouth. *Id*. During this exam, the dentist informed Givens that he would need to see an oral surgeon about the lesion; however, he then delayed in referring Givens to a surgeon for two months. *Id*. Givens was eventually diagnosed with a bone infection. *Id*. Two years later, he learned that the lesion and resulting infection had ultimately been caused by the initial root canal, which was performed without proper sanitation. *Id*. at 980. There was no allegation that the two-month delay had itself caused or contributed to the bone infection.

Givens raised two claims against the dentist: (1) the "severe, unnecessary pain" associated with the two-month delay in sending Givens to the oral surgeon; and (2) the bone infection. *Id*.

11

On appeal, only the first claim—the two month delay in the referral—was before the Seventh Circuit. *Id*. The Seventh Circuit held that because Givens' surviving claim related only to the delay in the seeing an oral surgeon, facts related to the cause of the infection and the date on which that claim accrued were immaterial. *Id*. at 981. Instead, the claim at issue accrued when Givens "knew of *that* injury (the pain associated with the two-month delay) and its cause (Dr. Luedtke's disregard of Givens' request for a specialist)." *Id*. Thus contrary to Defendants' argument, *Givens* did not remotely "reject[]" the rule of *Devbrow*. Instead, it applied the same rule: the claim accrues and the limitations period begins to run when the plaintiff "knows of his physical injury and its cause"—it simply must be the *relevant* injury. *Givens*, 587 F. App'x at 980 (citing *Devbrow*).

Mr. Nance's case falls squarely under *Devbrow*. Here, Mr. Nance's cirrhosis is the relevant injury. Accordingly, his knowledge of "*that* injury" "and its cause" (Defendants' deliberate indifference to signs of hepatitis) marks the beginning of the statute of limitations period. *See id.* at 981. His Complaint was thus timely filed.

Defendants alternatively attempt to engineer an earlier accrual date by pointing to a laundry list of older dates that have no bearing on the statute of limitations calculation here. First, Defendants wrongly contend that Mr. Nance alleged he was "diagnosed with Hepatitis B on May 23, 2014," pointing to allegations in the Amended Complaint that a hepatitis testing panel was ***ordered*** on that date by Dr. John Trost. (Br. at 8 (citing FAC at 31).) But the clock did not start ticking when *Defendants* learned of Mr. Nance's hepatitis. It is *Mr. Nance's knowledge* of his injury that is relevant under the discovery rule. As the Amended Complaint makes clear, Mr. Nance did not learn of his hepatitis B diagnosis until he was told the results of the testing by Dr. Fuentes later in 2014. (FAC at 13-14.) Mr. Nance only saw Dr. Fuentes twice in 2014: on August 6, 2014 and on November 15, 2014. (*Id*. at 24.) Therefore, the earliest Mr. Nance could have

learned of his diagnosis for hepatitis B was August 6, 2014.

Second, Defendants argue that the statute of limitations accrued even earlier, when Mr. Nance began to experience abdominal pain.  (Br. at 7.)[4]  This misunderstands the relevant injury, which was not abdominal pain, but cirrhosis of the liver resulting from untreated hepatitis.  "[T]he relevant injury for statute-of-limitations purposes is … the physical injury caused by the defendants' indifference to the prisoner's medical needs."  *Devbrow*, 705 F.3d at 768.  And, even if the abdominal pain was considered the "injury," accrual would still be delayed until at least August 6, 2014 under the "trivial-injury" exception.  Under that exception, accrual is delayed where "at first the injury reasonably seems trivial, and only much later is it discovered to be serious enough to warrant the expense of a precomplaint investigation."  *Goodhand*, 40 F.3d at 213.  Although Mr. Nance was obviously aware of his recurrent abdominal pain, the Defendants— medical professionals—told him that it was innocuous, and the result of over-exercising or "congest[ion]"—and prescribed over-the-counter pain medicine.  (*E.g.*, Compl. at 13-14, 17.)  Mr. Nance had no reason to believe that he had hepatitis, much less that it could lead to cirrhosis if left untreated.  And, until he was diagnosed with cirrhosis, he could not have known that Defendants' delay in diagnosis and treatment had caused permanent physical injury to his liver.

### 2. *Plaintiff's Claims Against Rashida Pollion Were Timely.*

Defendant Pollion specifically alleges that the original Complaint that named her as a defendant was not timely as to her because she last examined Mr. Nance on December 11, 2013, two and a half years before the Complaint was filed.  (Br. at 6.)  The "last examination" date is not

---

[4]      Defendants simultaneously argue that accrual began when Mr. Nance filed a "grievance related to the medical care of his above stated symptoms in 2011," citing the original Complaint. (Br. at 7 (citing Compl. at 17).)  Although the Complaint does include a 2011 date, the passage cites the grievance file in support.  (Compl. at 17 (citing "Exhibit B").)  The 2011 date is thus a typo, and an obvious one, as the earliest grievance indicated in the grievance file is from 2016. (Dkt. 1-1 at 18-24.)

the trigger, however.  As Mr. Nance pleads in his original Complaint, Defendant Pollion knew of

Mr. Nance's symptoms and abnormal test results, but chose not to address them; as a consequence,

Mr. Nance "now has cirrhosis of the liver and [an] enlarge[d] spleen cause[d] by Hep B disease."

(Compl. at 23.)  As discussed above, what is relevant is when Mr. Nance knew of his injury and

its cause, and that did not occur until May 2015, or August 6, 2016 at the latest.  Because the

original Complaint was timely, the motion should be denied as to Ms. Pollion.[5]

### 3. *Plaintiff's Claims Against The Newly Added Defendants Relate Back To The August 2016 Original Complaint.*

The relation back analysis under federal rules and Illinois law is essentially the same.

FRCP 15(c)(1)(C); 735 ILCS 5/2-616; *see Safeco*, 585 F.3d at 331.  There are three prongs: (1) that

the amended complaint set forth claims based on the same conduct; (2) that the newly named party

received notice of the action such that they would not be prejudiced, and (3) that the newly named

party knew or should have known that the action would have been brought against it, but for a

mistake concerning identity.  Fed. R. Civ. P. 15(c)(1)(C).

First, Defendants dispute the third prong, claiming that the Complaint did not provide

sufficient detail that Defendants knew or should have known of their involvement.  (Br. at 4-5.)

Second, Defendants argue that there would be prejudice under the second prong if the claims

against them were allowed to proceed.  (*Id*. at 5.)  Neither argument passes muster.

### 4. *Defendants Knew Or Should Have Known That, But For A Mistake, The Action Would Have Been Brought Against Them.*

"[T]he question under [the third prong] Rule 15(c)(1)(C)(ii) is what the prospective

---

[5]    Defendants also argue in a footnote that "[a]t minimum Plaintiff fails to allege sufficient facts to show that his claims were filed within the proper statute of limitations."  (Br. at 8 n.3.) This misstates the law.  Mr. Nance "was not required to" "anticipate … the assertion of an affirmative defense" "premised on the statute of limitations."  *Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 F. App'x 523, 525 (7th Cir. 2005) (vacating dismissal as premature).

defendant reasonably should have understood about the plaintiff's intent in filing the original Complaint against the first defendant."  *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010). Defendants argue that the original Complaint did not provide notice of their involvement because it only identified John or Jane Doe doctors and nurse practitioners, but "did not identify a gender, a date of treatment, or an identifying title of the persons he intended to name."  (Br. at 4.)

As described above, the original Complaint set forth the conduct that was at issue: Defendants' failure to diagnose and treat Mr. Nance's hepatitis, despite abnormal urinalysis results, blood tests, and complaints of recurrent abdominal pain.  And, as set forth in the FAC, each of the newly added Defendants fit the bill: each had access to and reviewed Mr. Nance's test results, and Defendants Fahim, Shepherd, and Shearing personally heard Mr. Nance complain of abdominal pain.  (FAC at 15-21, 26-27, 31-32.)

Moreover, contrary to Defendants' contention that the original Complaint provides no identifying details of Defendants' interactions with Mr. Nance, it includes an approximate date of examination as to each Defendant that is consistent with the pleading set forth in the FAC for Defendants Fahim, Shepherd, and Shearing.  Mr. Nance provided these details from memory and what little information he had, without access at the time of the original Complaint to "medical records to accurately state[] the dates, type of clinic, doctor or NP that he [saw] at these clinics," and while acknowledging that some of the different Doe defendants "may be the same doctor or [nurse]."  (Compl. at 11 n.2.)  A side-by-side comparison shows how well he did from memory:

| Original Complaint Defendant [Date Of Treatment] | FAC Defendant [Date Of Treatment] |
|---|---|
| Def. #3 [**August**, year unknown, but pled between 2009 and 2015] (Compl. at 13-14) | Fahim [**August** 2010, Feb. 2011, June 2011] (FAC at 17-19) |
| Def. #5 [**2011**] (Compl. at 15-16) | Shepherd [Sep. **2011**] (FAC at 26-27) |
| Def. # 8, 9, 10, 11 [all in **2012** or **2013**] | Shearing [Sep. and Nov. **2012**; Jul., Aug., |

| (Compl. at 19-22, 25-26) | Nov. **2013**] (FAC at 159-160) |

With these allegations, combined with Defendants' own knowledge as to the fact that they had treated Mr. Nance for his abdominal pain, and when and where they had done so, Defendants knew or should have known that, but for Mr. Nance's lack of knowledge as to their identities, the action would have been brought against them.   This case is like *Klinger v. City of Chicago*.   In *Klinger*, the court found that an off-duty police officer "knew or should have known he was the intended defendant in the original Complaint" raising a §1983 claim because, "assuming the truth of Plaintiff's allegations," he knew he had struck the plaintiff with his fist and given witnesses a fake name.   No. 15-CV-1609, 2017 WL 736895, *6 (N.D. Ill. Feb. 24, 2017).   Likewise, Defendants here knew they had seen Mr. Nance for abdominal pain and had reviewed his abnormal test results, and thus knew or should have known that they were the intended defendants.   *See also, e.g.*, *Zlatev*, 43 N.E.3d at 160, ¶ 34 ("If, as plaintiff alleges, defendant was the person who struck plaintiff with the brick, he knew or at least should have known that plaintiff meant to sue him.") (applying Illinois relation-back law).

Lastly, the original Complaint was filed *pro se*, and thus should be "construed more liberally than others," including with respect to "plaintiff's factual allegations and their legal theories."   *White v. City of Chicago*, 2016 WL 4270152, at *13 (N.D. Ill. Aug. 15, 2016).[6]

### 5.   *Defendants Received Notice Of This Action Such That They Would Not Be Prejudiced.*

Defendants allege the "original Complaint fails to plead sufficient facts or circumstances

---

[6]     Mr. Nance's lack of knowledge as to the true names of the Defendants at the time of the original Complaint qualifies as a "mistake" under state and federal relation-back law.  *See, e.g.*, *White*, 2016 WL 4270152, at *16 (gathering cases post-*Krupski* and concluding that "inadequate knowledge" such that the original Complaint named a "John Doe" qualifies as a "mistake" under FRCP 15(c)(1)(C)(ii) and 735 ILCS 5/2-616(d)(2)).

to put Defendants on notice of the claims against them," but not that they were unaware of the original Complaint itself.  Nor could they—the newly added Defendants are intertwined with Wexford and Rashida Pollion, both of whom were named in the original Complaint.  They were employed by Wexford at the time of the allegations, shared in the medical care provided to Mr. Nance that is at issue, and are represented by Wexford's and Rashida Pollion's counsel in the pending motion to dismiss.

Courts frequently find that defendants have a sufficient shared "identity of interest," and that newly added defendants thus received notice through originally defendants under similar circumstances.  In *Aldrich v. United States*, 2018 WL 6169204 (S.D. Ill. Nov. 26, 2018), the court found that notice on an original entity defendant, Brigham, could be "imputed" to the newly named defendant where the new "[d]efendant… was employed at [the original one] on [the date of the alleged events], presumably present during the surgical procedure at issue, and represented by the same attorney as three originally named defendants."  *Id*. at *7 (denying motion to dismiss); *see also White*, 2016 WL 4270152, at *13 (same; a shared attorney between original and new defendants was evidence the defendants "are intertwined to such an extent that service" on one provided "sufficient notice of the lawsuit" on the others); *Carothers v. Office of the Transitional Adm'r*, 2013 WL 3388876, at *3 (N.D. Ill. July 8, 2013) (same).

Moreover, Defendants have pointed to nothing in the record—neither a declaration from the newly added Defendants nor any other evidence—indicating that notice was lacking here.  At the very least, therefore, finding a lack of notice at the dismissal stage is inappropriate.  "Because nothing in the pleadings compels a contrary conclusion, the court cannot resolve the Rule 15(c)(1)(C)(ii) issue in the new defendants' favor on a Rule 12(b)(6) motion."  *McWilliams v. Cook Cty.*, 2018 WL 3970145, at *4 (N.D. Ill. Aug. 20, 2018) (gathering similar cases).

17

Defendants similarly have no basis to claim prejudice. They point to the delay between the original Complaint and the FAC, claiming "witnesses, evidence, and memories will be unavailable to them." (Br. at 5.) But, there is nothing on the record to indicate that the Defendants would in fact lack "witnesses, evidence, [or] memories." *See, e.g., Grede v. MBF Clearing Corp.*, 2018 WL 306668, at *7 (N.D. Ill. Jan. 5, 2018) ("[T]he issue of prejudice involves open questions of fact not apparent from the face of the complaint and thus not appropriate to determine in a motion to dismiss."); *In re THR & Assocs., Inc.*, No. 12-72022, 2016 WL 3134653, at *4 (Bankr. C.D. Ill. May 26, 2016) ("[Defendants'] suggestion that evidence is lost or witnesses have forgotten key information is speculative at best."). To the contrary, Wexford was a defendant in the original Complaint and should have preserved any evidence in its possession relating to Mr. Nance's treatment. Defendants should have access to those records through Wexford and their shared counsel.

Concluding that witnesses or "memories" were unavailable here would require "that all, or at least most, … new witnesses were available and had relevant information to provide to the Defendants on [May 2017]—the two-year deadline for filing the complaint—but by [May 2018]— the date leave was sought to file the [FAC]—they had become unavailable or forgotten what they knew." *See THR*, 2016 WL 3134653, at *5. This can hardly be so, with merely a year in between.

### C.  The FAC States a Claim Against Defendants Shepherd And Rector.

For deliberate indifference, a "prisoner must demonstrate that the defendant was aware of and consciously disregarded plaintiff's serious medical need." *Liebich*, 2013 WL 4476132, at *5. Defendants Shepherd and Rector claim their interaction with Mr. Nance was limited and innocuous, and that the FAC thus fails. (Br. at 8.) Not so.

First, Defendant Shepherd argues that the FAC fails to set forth facts sufficient to state a claim for deliberate indifference against because he examined Mr. Nance once on September 21,

18

2011, at which time he ordered a colon exam that Mr. Nance refused.  (Br. at 8.)  Defendants emphasize the fact that Mr. Nance "refused the recommended examination," (*id.* at 9), and gloss over the actual anchor of the allegation: that Dr. Shepherd also ordered a urinalysis on March 22, 2012 that would have indicated a need for hepatitis testing.  (FAC at 26-27.)  Here, although Dr. Shepherd only examined Mr. Nance once, the FAC sufficiently alleges deliberate indifference because it alleges that Dr. Shepherd: was aware of "signs and symptoms" that are "indicators of potential [hepatitis B]" infection; heard Mr. Nance's complaints of "pain, warmness, [and] discomfort on the right side of stomach"; reviewed Mr. Nance's medical chart, rife with "risk factors for [hepatitis B]"; and even ordered a test that "showed levels outside the refer[]ence range."  (FAC at 26-27.)  Nevertheless, Dr. Shepherd took no action to follow up on Mr. Nance's risk of hepatitis.  (*Id.* at 27.)  *See, e.g.*, *Liebich*, at *6 (denying dismissal of deliberate indifference complaint with allegations that one doctor "ignored abnormal tests results, and generally ignored plaintiff's requests for treatment" and another "ignored [plaintiff's] symptoms and pain").

*Andreyev v. Kjorlie*, 455 F. App'x 693, 696 (7th Cir. 2011), cited by Defendants, does not say otherwise.  (*See* Br. at 8.)  Defendants assert that *Andreyev* held that "when … defendants were only informed of the plaintiff's request on one or two occasions, plaintiff does not state a deliberate indifference claim[.]"  (*Id.*)  This misstates the case.  In *Andreyev*, the plaintiff alleged that "16 defendants, all guards at the jail, were deliberately indifferent to his periodontal disease because collectively they failed to respond favorably to 31 oral requests for a ***toothbrush or toothpaste*** during the first 3 $^1/_2$ months of his detention."  *Id.* at 694 (emphasis added).  Andreyev knew about his periodontal disease for years, had delayed surgery before entering prison, but never told jail officials about his ***disease*** and never requested care for his ***disease*** while in jail.  *Id.*  This is what the case actually turned on.  Although the court did note that "no single defendant refused

19

Andreyev a toothbrush more than four times, and most … no more than once or twice," it made this observation to explain that requests for ***toothbrushes*** were insufficient to alert the guards to Andreyev's ***periodontal disease***.  The guards were not deliberately indifferent because:  (1) unlike Andreyev, they  were unaware of Andreyev's disease; and (2) there was a demonstrated lack of causation between Andreyev's failure to brush and the poor condition of his teeth.  *Id*. at 695-96.

Second, Defendant Rector argues that the FAC fails to state a claim of deliberate indifference against her, essentially claiming that because she identified the need for hepatitis testing (FAC at 31), she is absolved of liability for her otherwise insufficient treatment of Mr. Nance.  (*See* Br. at 9.)  This is not the appropriate standard to judge deliberate indifference.  "The fact that a prisoner received some medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by blatantly inappropriate treatment, or by woefully inadequate action as well as by no action at all.  Refusing to treat a prisoner's chronic pain or erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards may constitute deliberate indifference."  *Liebich*, at \*5.  Ms. Rector responded to a probable hepatitis diagnosis with "blatantly inappropriate treatment."  *See id.*  Though she had identified Mr. Nance's risk of hepatitis, she proceeded to give him ibuprofen, a drug that had the potential to do further damage to his liver.  (FAC at 31.)  And Mr. Nance told Ms. Rector that he had already been prescribed ibuprofen to treat his abdominal pain—ineffectively—"for years."  (*Id*.)  Therefore, though Ms. Rector may have identified the correct diagnosis, she responded with blatantly erroneous treatment—deliberate indifference.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Dated:  January 9, 2019

Respectfully submitted,

/s/ *Amanda J. Hollis*
_____
Amanda J. Hollis
Rebecca C. Fitzpatrick
Nikhil Krishnan
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
amanda.hollis@kirkland.com
rebecca.fitzpatrick@kirkland.com
nikhil.krishnan@kirkland.com

21

## <u>CERTIFICATE OF SERVICE</u>

I, Amanda Hollis, hereby certify that on the 9th day of January, 2019, I caused a true and

correct copy of the foregoing to be filed electronically.  Notice of this filing will be sent to the

notice parties by operation of the Court's electronic filing system.

*/s/ Amanda J. Hollis*
Amanda J. Holllis