IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ELLEAN NANCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:16-CV-875-NJR-MAB** |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **WARDEN OF MENARD** | ) | |
| **CORRECTIONAL CENTER,** | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **CORRECTIONS,** | ) | |
| **JOHN R. BALDWIN,** | ) | |
| **SALVADOR GODINEZ,** | ) | |
| **STEVE MEEKS,** | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **JOHN TROST, RONALD SKIDMORE,** | ) | |
| **ANNA SCHOTT, FE FUENTES,** | ) | |
| **KIM BUTLER, RASHIDA POLLION,** | ) | |
| **ADRIAN FEINERMAN,** | ) | |
| **ROBERT SHEARING,** | ) | |
| **JOHN SHEPHERD, MAGID FAHIM,** | ) | |
| **and ANGEL RECTOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on two motions to dismiss filed by Defendants

Magid Fahim, Adrian Feinerman, Angel Rector, Robert Shearing, John Shepherd,

Rashida Pollion, Fe Fuentes, and John Trost (Docs. 194, 219).

## <u>BACKGROUND</u>

Plaintiff Ellean Nance filed his original *pro se* Complaint with this Court on August

3, 2016, alleging prison officials collectively failed to diagnose and treat his hepatitis B

while he was incarcerated at Stateville and Menard, which has left him with scarring and cirrhosis of his liver (Doc. 1, pp. 1-42). The Court conducted a threshold review of the claims pursuant to 28 U.S.C. § 1915A, and Nance was allowed to proceed with his Eighth Amendment deliberate indifference claims relating to his treatment from 2009 to 2015 while at Menard against Jane and John Does #1–12, Rashida Pollion, "Mrs. Fruetas," and Wexford Health Sources, Inc. (Doc. 7).

In December 2016, several months after the threshold review was complete, counsel was recruited for Nance because he was unable to identify the Jane and John Doe Defendants (Doc. 36). On March 2, 2017, his attorney filed an amended complaint identifying several new prison officials, nurses, and doctors as defendants, including Dr. John Trost and Dr. Fe Fuentes (Doc. 43). The only John Does remaining in the amended complaint were John Doe #1, identified as a medical technician for North 1 Cell House at Menard, and John Doe #2, identified as a physician at the University of Illinois at Chicago (Doc. 43, pp. 1-2). Nance's attorney obtained a summons for each of the new defendants, and all of them were served, except for Dr. Trost and Dr. Fuentes (Docs. 62, 67–74); service on these defendants seems to have fallen through the cracks and was never addressed by the parties or the Court.

A Scheduling Order was entered on June 19, 2017, giving Nance four months to identify the John Doe Defendants and any additional claims or parties (Doc. 84). On October 19, 2017, with one day to spare, Nance's attorney sought leave to file a second amended complaint in order to add a previously unidentified defendant and to identify John Doe #2 as Dr. Juliana Chan (Doc. 96). Nance's attorney indicated that he had been

unable to obtain the identity of John Doe #1 or "to identify any additional causes of action that would be appropriate at this time" (Doc. 96).

Before the motion to amend was ruled on, however, Nance filed a *pro se* motion requesting his counsel be terminated (Doc. 98). He specifically objected to his attorney's failure to include claims regarding John Does #3 through 12 and asked for additional time to conduct discovery in order to identify the John Does (Doc. 98, p. 2). Even though Nance's inability to identify the John Does was the reason he was given counsel in the first place, Magistrate Judge Donald Wilkerson nevertheless granted Nance's motion and terminated his attorney (Doc. 107). Judge Wilkerson also gave Nance additional time to identify the John Doe Defendants (Doc. 112). In March 2018, after two requests for extensions of time, Nance finally filed his motions seeking leave to amend his complaint to add several defendants (Docs. 118, 123, 124, 125). His motions were denied for technical reasons, but Judge Wilkerson gave Nance leave to refile them with additional instructions on how to do so (Doc. 134). Nance refiled his motions on May 4, 2018 (Docs. 134, 142, 143).

Defendants opposed Nance's motions to amend each time they were filed (Docs. 126, 144). They argued, among other things, that Nance should not be allowed to amend because the statute of limitations on his proposed claims against Adrian Feinerman, Robert Shearing, John Shepherd, and Magid Fahim had already expired (Docs. 126, 144). Defendants also argued that allowing Nance to amend would delay the proceedings and prejudice them because the original complaint had been filed 21 months prior to his motion and seven months after the expiration of the court-imposed deadline

for amending the complaint (Doc. 144).

Judge Wilkerson granted Nance leave to amend his complaint over Defendants' objections (Doc. 154). Nance's fourth amended complaint was filed on September 14, 2018 (Doc. 159). He substituted Dr. Adrian Feinerman, Dr. Magid Fahim, Dr. Robert Shearing, Dr. John Shepherd, Dr. Samuel Nwaobasi, and Angel Rector for some of the unknown defendants (Doc. 154). Nance also renamed Dr. Trost and Dr. Fuentes in his fourth amended complaint and, because Nance was no longer represented by counsel, the Court handled service on Dr. Trost and Dr. Fuentes, as well as the new defendants (Docs. 160–165, 198-200).

Defendants Wexford Health Sources, Inc., Magid Fahim, Adrian Feinerman, Angel Rector, Robert Shearing, John Shepherd, and Rashida Pollion filed their motion to dismiss on November 29, 2018, arguing that Nance's claims against them were time-barred (Docs. 194, 195). Defendants Fe Fuentes and John Trost filed their motion to dismiss on January 16, 2019, likewise arguing that Nance's claims against them were time-barred (Docs. 219, 220). John Shepherd, Angel Rector, and John Trost also argued that Nance failed to state a claim against them (Docs. 194, 195, 219, 220).

DISCUSSION

I.    DEFENDANT WEXFORD HEALTH SOURCES, INC.

The motion to dismiss indicates that it is brought, in part, on behalf of Wexford (Doc. 194). Unfortunately, however, neither the motion nor the supporting memorandum makes any argument as to why the claims against Wexford should be dismissed (*see* Docs. 194, 195). Consequently, the motion to dismiss is denied as to Wexford.

II.   STATUTE OF LIMITATIONS

A claim can be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it is "indisputably time-barred." *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (citing *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005)). "Section 1983 suits in Illinois have a two-year statute of limitations, which is tolled while the prisoner exhausts the administrative grievance process." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). The statute of limitations on a claim for deliberate indifference to a prisoner's serious medical needs generally begins to run (or, stated differently, the claim accrues) when "the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013). For a continuing violation, however, the limitations period does not start to run on the date the inmate first discovers his medical problem, but later on the last day of his ongoing injury. *Id.* at 770. *Accord Turley*, 729 F.3d at 651 ("For continuing Eighth Amendment violations, the two-year period starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first.") (citing *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)). An Eighth Amendment claim for the denial of medical care can constitute a continuing violation when "the injuries about which the plaintiff is complaining . . . are the consequence of a numerous and continuous series of events" and "it would be unreasonable to require or even permit him to sue separately over every incident of the [defendants'] unlawful conduct." *Heard*, 253 F.3d at 319; *accord Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017).

If a plaintiff amends his complaint to add new defendants after the two-year

limitations period has expired, the amendment is time-barred, unless it relates back to an earlier, timely-filed complaint pursuant to Federal Rule of Civil Procedure 15(c)(1)(c) or equitable tolling applies. In order for the amendment to relate back, there are three requirements that must be met. First, the new claim must arise out of the same conduct, transaction, or occurrence as set forth in the earlier pleading. FED. R. CIV. P. 15(c)(1)(C). Second, the newly-added defendant must have received notice of the action within the period provided by Rule 4(m) for serving the summons and complaint, such that the party will not be prejudiced in maintaining its defense on the merits. FED. R. CIV. P. 15(c)(1)(C)(i). Third, the newly-added defendant must have known or should have known within the Rule 4(m) period that it would have been sued initially but for a mistake concerning the proper party's identity. FED. R. CIV. P. 15(c)(1)(C)(ii).

Equitable tolling, which is governed by Illinois law, "is granted sparingly only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015) (citation omitted). A plaintiff must also be able to show that "he has diligently pursued his claim, despite the obstacle." *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008) (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). Equitable tolling may apply when, for example, "the plaintiff is unable to determine who caused his injury, has received inadequate notice, or if the appointment of counsel is pending." *Savory v. Lyons*, 469 F.3d 667, 673 (7th Cir. 2006) (citing *Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 561 (7th Cir. 1996)).

### A. Defendants Adrian Feinerman, Magid Fahim, Robert Shearing, and John Shepherd

The Court must determine as an initial matter when Nance's claims against the defendants accrued. The answer is not the same for all of the defendants. Adrian Feinerman, Magid Fahim, John Shepherd, and Robert Shearing are in a different boat. These four men were all medical doctors at Menard who were added as defendants to this action through the fourth amended complaint (Docs. 142, 159). Specifically, they were each substituted in as one of the John Does named in the original complaint (Doc. 1, Doc. 159). Dr. Feinerman, Dr. Fahim, Dr. Shepherd, and Dr. Shearing all retired or left the employ of Wexford before Nance ever filed his initial complaint (Docs. 194, 195).[1]

"[A] claim against any particular person accrues immediately when that person loses the ability 'to do something about [the plaintiff's] condition.'" *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013) (quoting *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)). "This means . . . that, when a person resigns or retires from his public employment, the claim accrues on that date." *Heard v. Elyea*, 525 F. App'x at 511 (citing *Shomo v. City of New York,* 579 F.3d 176, 182 (2d Cir. 2009) and *Hensley v. Columbus,* 557 F.3d 693, 697 (6th Cir. 2009)).

---

[1] Although Defendants did not bring up the impact the end of their employment at Menard had on the statute of limitations in their motion to dismiss (*see* Docs. 194, 195), it was previously brought up in their opposition to Nance's motions for leave to amend (Docs. 126, 144). Because it does not appear that this argument was addressed with respect to the motion to amend, the Court opts to consider the argument now in the context of the motions to dismiss.

### 1.  Dr. Adrian Feinerman

Dr. Feinerman left his employment at Menard on January 15, 2010 (Doc. 126).[2] Consequently, the statute of limitations on Nance's claim against Dr. Feinerman began to run on that date. The limitations period was not tolled for any length of time by the administrative grievance process.[3] The two-year statute of limitations thus expired in January 2012. Nance didn't seek to identify one of the John Does named in his original complaint as Dr. Feinerman until May 17, 2018 (Doc. 142)—over *six years* after the limitations period expired. Thus, his claim against Dr. Feinerman is time-barred. Relation back under Rule 15(c) cannot save the claim because the original complaint was not timely filed as to Dr. Feinerman. *See* FED. R. CIV. P. 15(c). The original complaint was filed on August 3, 2016 (Doc. 1)—over four and half years after the limitations period as to Dr. Feinerman expired. Equitable tolling also cannot save the claim because nothing in the record suggests there is any basis for tolling the statute of limitations for a matter of *years* (*see, e.g.,* Docs. 213, 228). Accordingly, Dr. Feinerman will be dismissed from this matter with prejudice.

---

[2] *See Thompson v. Wexford Health Sources, Inc.,* Case. No. 18-cv-1495 (S.D. Ill.), Doc. 31, Answer of Adrian Feinerman (stating he was the Medical Director from January 4, 2009 to September 2009, and then on an as needed basis form September 21, 2009 to January 2010).

[3] By Nance's own admission, he did not file any grievances regarding his medical care until 2016 (*see* Doc. 213, p. 17 n.4; *see also* Docs. 81, 81-1 through 81-4). Because Nance was not engaged in the administrative grievance process between January 2010 and January 2012, there is no basis to conclude that the statute of limitations was tolled for any length of time with respect to his claim against Dr. Feinerman. The same can be said for his claims against Dr. Fahim, Dr. Shepherd, and Dr. Shearing.

### 2. Dr. Magid Fahim

Dr. Fahim left his employment at Menard on August 19, 2011 (Doc. 126),[4] and therefore the statute of limitations on Nance's claim against Dr. Fahim began to run on that date. The limitations period was not tolled for any length of time by the administrative grievance process, *see supra* n.3, and thus expired in August 2013. Nance didn't seek to identify one of the John Does named in his original complaint as Dr. Fahim until May 17, 2018 (Doc. 142)—close to *five years* after the limitations period as to Dr. Fahim expired. Therefore, his claim against Dr. Fahim is time-barred. As with Dr. Feinerman, relation back cannot save the claim because the original complaint was not timely filed as to Dr. Fahim. It was filed on August 3, 2016 (Doc. 1)—almost three years after the limitations period as to Dr. Fahim expired. Equitable tolling also cannot save the claim because, as explained above with respect to Dr. Feinerman, nothing in the record suggests there is any basis for tolling the statute of limitations for a matter of *years*. Accordingly, Dr. Fahim will be dismissed from this matter with prejudice.

### 3. Dr. John Shepherd

Dr. Shepherd left his employment at Menard on March 10, 2013 (Doc. 126),[5] and thus the two-year statute of limitations on Nance's claim against Dr. Shepherd began to run on that date. The limitations period was not tolled for any length of time by the

---

[4] *See Pyles v. Fahim*, 771 F.3d 403, 406 (7th Cir. 2014), *aff'g Pyles v. Fahim*, No. 11-CV-378-SCW, 2014 WL 1089091, at *3 (S.D. Ill. Mar. 14, 2014) (finding Dr. Fahim left Wexford's employ on August 19, 2011).

[5] *See Thompson v. Wexford Health Sources, Inc.*, Case. No. 18-cv-1495 (S.D. Ill.), Doc. 34, Answer of John Shepherd (stating he worked at Menard from February 11, 2006, to March 10, 2013).

administrative grievance process, *see supra* n.3, and thus expired in March 2015. Nance did not seek to identify one of the John Does named in his original complaint as Dr. Shepherd until May 17, 2018 (Doc. 142)—over *three years* after the limitations period at to Dr. Shepherd expired. Thus, his claim against Dr. Shepherd is time-barred. As with the previous defendants, relation back cannot save the claim because the original complaint was not timely filed as to Dr. Shepherd. It was filed on August 3, 2016 (Doc. 1)—almost a year and a half after the limitations period as to Dr. Shepherd expired. Equitable tolling also cannot save the claim because, as explained above, nothing in the record suggests there is any basis for tolling the statute of limitations for a matter of *years*. Accordingly, Dr. Shepherd will be dismissed from this matter with prejudice.

### 4.  Dr. Robert Shearing

Dr. Shearing left his employment at Menard on November 16, 2013 (Doc. 126),[6] and thus the two-year statute of limitations on Nance's claim against Dr. Shearing began to run on that date. The limitations period was not tolled for any length of time by the administrative grievance process, *see supra* n.3, and thus expired in November 2015. Nance did not seek to identify one of the John Does named in his original complaint as Dr. Shearing until May 17, 2018 (Doc. 142)—*two and a half* years after the limitations period as to Dr. Shearing expired. Therefore, his claim against Dr. Shearing is time-

---

[6] *See McGowan v. Harrington, et al.*, Case No. 14-cv-14, (S.D. Ill.), Doc. 115-3, affidavit of Robert Shearing (averring that he was the Medical Director at Menard from October 15, 2012 to November 16, 2013. *See also Jellis v. Harrington, et al.*, Case No. 15-cv-630 (S.D. Ill.), Doc. 138-1, affidavit of Robert Shearing averring that he was the Medical Director at Menard from October 15, 2012 to November 16, 2013, but his last day of work at Menard was on November 14, 2013.

barred. As with the previous defendants, relation back cannot save the claim because the original complaint was not timely filed as to Dr. Shearing. It was filed on August 3, 2016 (Doc. 1)—nearly ten months after the limitations period as to Dr. Shearing expired. Equitable tolling also cannot save the claim because, as explained above, nothing in the record suggests there is any basis for equitably tolling the statute of limitations for a substantial period of time. Accordingly, Dr. Shearing will be dismissed from this matter with prejudice.

### B. Defendants Rashida Pollion, Dr. John Trost, Dr. Fe Fuentes, and Angel Rector

The Court next addresses the statute of limitations argument as to the other moving defendants:   Rashida Pollion, Dr. John Trost, Dr. Fe Fuentes, and Angel Rector.

Rashida Pollion was named as a defendant in Nance's original complaint and filed her answer on October 24, 2016 (Docs. 1, 18). After Nance filed his fourth amended complaint, Defendant Pollion filed her motion to dismiss, arguing that Nance's claims against her are barred by the statute of limitations (Doc. 194). Nance alleges that he saw Pollion at least seven times throughout 2012 and 2013 (Doc. 159, p. 28). At each visit, he complained to Pollion about pain, warmness, discomfort, on the right side of his stomach (*Id.*). And at each visit, Pollion either ignored him or gave him ibuprofen and/or antacid, even though he told her those were not effective (*Id.*). She did not take any action to determine the cause of Nance's pain and discomfort (*Id.* at pp. 28–29).

Nance first named Dr. John Trost as a defendant in his first amended complaint (Docs. 41, 43). Trost was not served and did not become an active defendant, however,

until after Nance filed his fourth amended complaint. Nance originally alleged that Dr. Trost was deliberately indifferent because, as the medical director, Trost learned that Nance was not receiving adequate medical care when he saw Nance's grievance in 2016, but Dr. Trost took no action (Doc. 43; Doc 159, pp. 33–34). In the fourth amended complaint, Nance amended his claim against Dr. Trost to add allegations that Trost was deliberately indifferent when he ordered lab tests in March 2014, which came back abnormal, but did nothing to follow up on those abnormal results until Angel Rector concluded in May 2014 that Nance needed to be tested for hepatitis (Doc. 159, pp. 31, 33, 34).

Nance first named Dr. Fe Fuentes as a defendant in his first amended complaint, which he sought leave to file on February 6, 2017 (Doc. 41). Fuentes was not served and did not become an active defendant, however, until after Nance filed his fourth amended complaint. Nance alleges that from 2009 through 2013, he informed Dr. Fuentes during his visits to the hypertension and asthma clinic that he was experiencing pain, warmness, and discomfort in his right side (Doc. 159). Dr. Fuentes prescribed Nance ibuprofen and antacids but took no further action to determine the source or cause of Nance's issues (*Id.*). In 2014, after Dr. Fuentes informed Nance that he had hepatitis B, she prescribed him pain medication but took no further action to treat the hepatitis B (*Id.*).

Angel Rector, a nurse practitioner at Menard, was added as a defendant to this action through the fourth amended complaint (Doc. 159). Specifically, she was substituted in as one of the Jane Does named in the original complaint (Doc. 1; Doc. 159, p. 31). Nance alleges that Rector saw him at an asthma clinic on May 17, 2014. (Doc. 159,

p. 31). At the visit, Rector recommended that Nance be tested for hepatitis B, and she prescribed him ibuprofen (*Id.* at pp. 31–32). Nance alleges that Rector was deliberately indifferent in prescribing the ibuprofen because he told her it was ineffective and because, according to him, it increases the risk of liver injury in persons with hepatitis B (*Id.*).

Once again, the Court's first task is to determine when the statute of limitations began to run as to these defendants. Nance argues that the statute of limitations did not begin to run until he learned the defendants' names (Doc. 213, pp. 7–8). That is not so.

> [W]hen a statute of limitations does not begin to run until "discovery," the discovery referred to is merely discovery that the plaintiff has been wrongfully injured. He doesn't have to know who injured him. He has the limitations period to discover that, draft his complaint, and file suit. If despite the exercise of reasonable diligence he cannot discover his injurer's (or injurers') identity within the statutory period, he can appeal to the doctrine of equitable tolling to postpone the deadline for suing until he can obtain the necessary information.

*Fid. Nat. Title Ins. Co. of New York v. Howard Sav. Bank*, 436 F.3d 836, 839 (7th Cir. 2006); *accord Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015). *See also Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) ("It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires.")

Defendants, for their part, argue that the statute of limitations began to run as to each of them on the date they last treated Nance (Doc. 195; Doc. 220). This argument assumes that Nance's suit rests on multiple, discrete episodes of alleged deliberate indifference. The Court believes, however, that Nance's suit is properly understood as alleging an ongoing violation. Nance essentially alleges that he was given a medical

runaround for about seven years. He claims that he began reporting stomach pain, discomfort, warmth, and nausea to medical providers beginning in 2009 (Doc. 7, Doc. 159). Despite his symptoms, as well as his abnormal lab results and his social history, no medical providers made any attempt to diagnose the underlying issue until May 2014 (Doc. 159). It is not entirely clear from the complaint when exactly Nance learned that he had hepatitis B (*see* Doc. 159). After his diagnosis, Nance alleges that medical providers failed to monitor the disease or provide any treatment for it until "sometime late in the year 2016" (Doc. 159, p. 10). Nance claims that as a result of the denial and/or delay in receiving adequate medical care, he has liver scarring and cirrhosis and is at a much greater risk for liver cancer (Doc. 159).

Given the continuing nature of Nance's injury, he can "reach back to its beginning even if that beginning lies outside the statutory limitations period" because "it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (quoting *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001)). Nance was not required to sue until the deliberate indifference ended, and the statute of limitations starts to run "from the date of the last incidence of the violation." *Cesal*, 851 F.3d at 722 (quoting *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013)). *See also Jervis v. Mitcheff*, 258 F. App'x 3, 6 (7th Cir. 2007) ("The statute of limitations commences anew every day that treatment is withheld . . . so in this case it does not matter whether [plaintiff] sued more than two years after he saw [the defendant physician] for the first and only time.") (internal citation omitted).

The Court declines at this juncture to attempt to pinpoint the date on which the statute of limitations began to run as to Defendants Rector, Pollion, Trost, and Fuentes because there are a number of factual and legal issues that the Court cannot decide without further information and input from the parties. To begin with, Nance alleges that each of the defendants is deliberately indifferent for slightly different reasons: some defendants were deliberately indifferent because they failed to take any steps to diagnose his hepatitis B, some failed to prescribe any treatment for the hepatitis B after he was diagnosed, and/or some failed to prescribe him anything to alleviate his pain and discomfort (Doc. 159). It is not readily apparent whether Nance's claims should be treated as one big continuing violation or whether they should be parsed out into several distinct continuing violations, *i.e.*, a continuing violation that ended when Nance was finally diagnosed with hepatitis B, a second continuing violation that ended when Nance began receiving treatment for his hepatitis B, and a third continuing violation that ended when Nance began receiving treatment that alleviated his pain and discomfort. Either way, the Court cannot determine the exact date on which the statute of limitations began because Nance does not provide any specific dates in the fourth amended complaint, such as when he was diagnosed with hepatitis B, when he learned of the diagnosis, when he began receiving "treatment for the disease," and when (and if) he ever received adequate treatment for his pain and discomfort (*see* Doc. 159).

Given the lack of specific dates in the complaint, and the failure of both parties to address the continuing violation doctrine and its effect on the accrual date in this case, the Court is unable to conclusively determine whether Nance's claims against Defendants

Rector, Pollion, Trost, and Fuentes are time-barred. Consequently, the motions to dismiss are denied as to these defendants.

### III.   FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a claim can be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the plaintiff's favor. *See*, *e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted).

The complaint will survive the motion to dismiss for failure to state a claim only if it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege that he was suffering from an objectively serious medical condition and the prison official was deliberately indifferent to that condition. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citation omitted). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776–77 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Dr. Shepherd, Angel Rector, and John Trost argue that Nance failed to state a claim

against them (Docs. 194, 195, 219, 220). Given the conclusion that Nance's claim against Dr. Shepherd is time-barred, the Court need not consider whether Nance also failed to state a claim against him.

As for Angel Rector, Nance alleges that Rector saw him at an asthma clinic on May 17, 2014. (Doc. 159, p. 31). Nance reported pain and discomfort, and Rector gave him ibuprofen but advised him not to take more than two pills at a time (*Id.*). She also recommended that Nance be tested for hepatitis B, and Dr. Trost ordered a hepatitis panel based on her recommendation (*Id.*). Nance also alleges, however, that he told Rector "that he has been proscribed [sic] ibuprofen pills for years" and that Rector "knew or should have known that ibuprofen pills was contributing to [his] complaint symptoms from years of ibuprofen pills taken can cause inflammation in the liver" (*Id.*).

Construing the complaint in a light most favorable to Nance, it can be read to assert that Rector was deliberately indifferent because she persisted in prescribing a medication that she knew was ineffective. It can also be read to assert that Rector was deliberately indifferent because, according to Nance, ibuprofen increases the risk of liver injury in persons with hepatitis B, and Rector prescribed ibuprofen to him despite her suspicion that Nance had hepatitis B. This is sufficient to state a claim for deliberate indifference against Defendant Rector. *See, e.g., Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (prisoner may be able to establish deliberate indifference by demonstrating that the doctor "fail[ed] to follow an existing protocol."); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("A prisoner may establish deliberate indifference by demonstrating that the treatment he received was 'blatantly inappropriate.'") (citation omitted); *Arnett v.*

*Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("A prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition.")

Dr. Trost argues that Nance's new allegations in the fourth amended complaint fail to state a claim upon which relief can be granted (Doc. 220, p. 8). Nance alleges, in pertinent part, that Dr. Trost ordered lab tests in March 2014, which came back abnormal (Doc. 159, p. 33). But Dr. Trost did nothing to follow up on those abnormal results until Angel Rector concluded in May 2014 that Nance needed to be tested for hepatitis (*Id.* at pp. 31, 33, 34). In other words, Nance is alleging that Dr. Trost ignored abnormal test results. This is sufficient to state a claim for deliberate indifference. *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) ("A prison officer is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health[.]'") (citation omitted); *Cavalieri v. Shepard*, 321 F.3d 616, 626 n.1 (7th Cir. 2003) ("Deliberate indifference has been found when the state actor did nothing or next to nothing in response to a substantial . . . health risk.").

Accordingly, the motion to dismiss for failure to state a claim is denied as to Defendants Trost and Rector.

## CONCLUSION

For the reasons set forth above, the motion to dismiss (Doc. 194) is **GRANTED in part and DENIED in part.** It is **GRANTED** as to Defendants Adrian Feinerman, Magid Fahim, John Shepherd, and Robert Shearing. These individuals are **DISMISSED** with prejudice; judgment will enter accordingly at the conclusion of this case. The motion is

**DENIED** as to Defendants Wexford Health Sources, Inc., Rashida Pollion, and Angel Rector.

The motion to dismiss (Doc. 219) is **DENIED.** All other currently pending motions will be addressed by separate order.

**IT IS SO ORDERED.**

**DATED:   April 15, 2019**

s/ Nancy J. Rosenstengel
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**