IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELLEAN NANCE,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>JOHN TROST, FE FUENTES, and<br>RASHIDA POLLION,<br><br>　　　　　　Defendants. | Case No. 16-cv-875-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendants Fe Fuentes, John Trost, and Angela Rector (Docs. 251 and 252). Plaintiff Ellean Nance has filed a response (Doc. 257) in opposition to the motion and Defendants have filed a reply (Doc. 261). Nance subsequently dismissed Rector as a defendant to streamline the case (Docs. 274 & 281). A hearing was held on the matter on August 12, 2019, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2007).

## BACKGROUND

Plaintiff Nance is an inmate in the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Stateville Correctional Center ("Stateville"). For years, while at Menard Correctional Center ("Menard"), Nance received treatment for asthma and hypertension from Menard's chronic care clinic. In 2009, Nance began complaining to providers at the clinic that he was experiencing continuous pain in the right side of his stomach. Nance was given ibuprofen, but the symptoms did not improve. In November

2014, Nance was diagnosed with hepatitis B; he does not know how or when he contracted the disease. IDOC initially referred Nance to Wexford's infectious disease specialist for treatment but on May 4, 2015, Nance began treating with University of Illinois, Chicago ("UIC"). Nance has been under UIC's exclusive care for hepatitis B ever since.

In August 2016, Nance filed this suit pursuant to 42 U.S.C. § 1983, alleging he has received inadequate treatment for his hepatitis B for nearly a decade (Doc. 1). Nance brings his claims against a number of medical professionals currently and previously employed at Menard and Wexford.[1] He alleges Defendants are liable for different reasons; some failed to diagnose his hepatitis B, some failed to prescribe him treatment, and/or some failed to prescribe him anything to alleviate his pain. Nance currently proceeds on the following counts:

**Count 1:** Deliberate indifference against Wexford, Dr. John Trost, Rashida Pollion, and Fe Fuentes

**Count 2:** Intentional Infliction of Emotional Distress against Wexford, Trost, Pollion. and Fuentes; and

**Count 3:** Municipal policy claim against Wexford.

(Doc. 159).

Prior to bringing this suit, Nance filed two relevant grievances with Menard concerning his treatment, dated January 10, 2016 and January 26, 2016.[2] Defendants Trost

---

[1] Although Nance also brought claims against a number of IDOC officials and employees, those claims have since settled (Doc. 286).
[2] Nance also filed grievances on February 3, 2016 and February 12, 2016. The grievances, however, were not fully exhausted before Nance filed this action, and exhaustion is a precondition to filing suit. *Bentz v. Qualls*, 2015 WL 5062775, at *5 (S.D. Ill. Aug. 26, 2015). The February 3 grievance was still pending when Nance filed his initial Complaint, and the February 12 grievances was improperly filed directly to the Administrative Review Board ("ARB"). Thus, neither of the grievances is sufficient to exhaust Nance's

and Fuentes argue summary judgment should be entered in their favor because Nance submitted the grievances more than sixty days after they last treated him for hepatitis B (Doc. 251). Nance, however, argues Defendants' conduct was a continuing violation of his Eighth Amendment rights, and he could file a grievance at any time during the allegedly inadequate care (Doc. 257). At the hearing, Nance testified via videoconferencing and confirmed Defendants were not involved in treating his hepatitis B, in any way, after he began treating with UIC on May 4, 2015. Nance's doctor from UIC decided to monitor his condition instead of administering antiviral therapy and Nance's dissatisfaction with this decision prompted him to file the grievances in 2016.

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must

---

administrative remedies and will not be considered.

occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

## A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Nance was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board

("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill.

Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

**ANALYSIS**

Under the procedures set forth in the Illinois Administrative Code, an inmate is required to file a written grievance within 60 days of the "incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a). The Seventh Circuit has recognized an exception to the sixty-day limitation for filing a grievance when the plaintiff complains of continuing misconduct. In *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, an inmate filed suit under the Eighth Amendment for repeated, frivolous lockdowns that resulted in physical and psychological injuries. The lockdowns occurred from 2008 through 2009 and the plaintiff filed a grievance in February 2009. *Id.* at 648. The Seventh Circuit found that the grievance was sufficient to exhaust the plaintiff's remedies regarding the 2008 and 2009 lockdowns because "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Id.* at 650. "Separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id. Turley* recognizes that the purpose of a grievance is to put a prison on notice of a problem and give a facility the opportunity to remedy the issue. *See Id.* "Thus, once a prisoner has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.*

In this case, Nance lodges factually distinct allegations against Defendants that cannot be lumped together as one continuing violation. The Court noted in its previous decision,

> It is not readily apparent whether Nance's claims should be treated as one big continuing violation or whether they should be parsed out into several distinct continuing violations, *i.e.*, a continuing violation that ended when Nance was finally diagnosed with hepatitis B, a second continuing violation that ended when Nance began receiving treatment for his hepatitis B, and a third continuing violation that ended when Nance began receiving treatment that alleviated his pain and discomfort. Either way, the Court cannot determine the exact date on which the statute of limitations began because Nance does not provide any specific dates in the fourth amended complaint, such as when he was diagnosed with hepatitis B, when he learned of the diagnosis, when he began receiving "treatment for the disease," and when (and if) he ever received adequate treatment for his pain and discomfort.

(Doc. 240, p. 15).

Now that the Court is fully apprised of the facts underlying this case, it is clear that Nance's grievances are insufficient to exhaust his administrative remedies against Trost and Fuentes. Nance began complaining of stomach pain in 2009 and was diagnosed with hepatitis B in 2014, he treated with Wexford's specialist from 2014 until May 2015, and he has exclusively treated with UIC since May 2015. These three distinct periods do not constitute one continuing violation because they include different forms of deliberate indifference against different defendants. For instance, Nance alleges that from 2009 until 2014 Fuentes and Trost failed to diagnosis his hepatitis B despite complaints of stomach pain and corroborating lab results, that after his diagnosis they failed to adequately treat his hepatitis B because they only provided him with ibuprofen and antacid pills, and that after he came under UIC's care he received inadequate treatment because UIC decided against antiviral therapy. *See Love v. Hoffman*, Case No. 18-cv-386, 2019 WL 529935, at *2

(W.D. Wis. Feb. 11, 2019) (finding no continuing violation because the "[d]efendants' delays in assessing [the prisoner's] injury, scheduling surgery, or treating his presurgical problems are simply different types of misconduct than defendants' failure to treat his postsurgical condition"); *Barrow v. Wexford Health Sources, Inc.*, Case No. 14-cv-941, 2015 WL 11539508, at *5 (S.D. Ill. July 16, 2015) ("Plaintiff's change in treatment providers necessarily changed the conditions of the medical care provided, necessitating a new grievance"); *Abdullah v. Shah*, Case No. 16-cv-920, 2018 WL 1833149, at *4 (S.D. Ill. Feb. 9, 2018) ("The fact that Plaintiff's main treating physician changed, and that his conditions were reevaluated and he was provided different treatment, are relevant intervening factors that would terminate a continuing violation").

Thus, Nance's 2016 grievance was insufficient to exhaust his remedies as to Fuentes and Trost, who last treated him in 2014.

## Conclusion

Accordingly, the motion for summary judgment filed by Fe Fuentes and John Trost (Doc. 251) is **GRANTED**. Fuentes and Trost are **DISMISSED** from this case with prejudice. The Clerk is **DIRECTED** to enter judgment at the close of the case.

**IT IS SO ORDERED.**

DATED: February 7, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**