IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ELLEAN NANCE, | |
| Plaintiff, | |
| v. | Case No. 3:16-CV-875-NJR |
| WEXFORD HEALTH SOURCES, INC., | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

At the recent final pretrial conference (*see* Doc. 355), the parties were unable to submit a joint proposed final pretrial order because they dispute what should be included in the statement of the claim and what claims actually remain for trial. Specifically, the parties dispute whether Nance can proceed on a failure to vaccinate claim against Wexford. They also dispute whether Nance can refer to "other similarly situated prisoners."

The Court has now reviewed the operative Amended Complaint (Doc. 159) (filed *pro se*), as well as Nance's responses to the summary judgment motion and motions to reconsider (Doc. 288, 308, and 320) and the Court's orders related to the summary judgment and motions to reconsider (Docs. 300, 313, and 322). The statement of claim in the final pretrial order will be finalized by the undersigned in light of the following:

**Vaccination Claim**

As to the vaccination claim, Nance argues that the Fourth Amended Complaint

(Doc. 159) states that Wexford had a policy or practice that resulted in a failure to provide inmates with essential medical care and that Wexford failed to diagnose and treat conditions like hepatitis B. Counsel argued that hepatitis policies in general—and policies regarding vaccination—were relevant to the transmission of hepatitis B in a prison setting and whether there were adequate screening policies (because without vaccine policies, the rate of infection would be higher).

Looking at the Fourth Amended Complaint (Doc. 159), which was filed *pro se* after the original assigned counsel had filed an Amended Complaint, it largely follows the Amended Complaint assigned counsel had filed. The Fourth Amended Complaint states that "Wexford maintain[s] a policy, procedure, or practice…under which he and inmates with serious medical concerns…denied him access to adequate medical care." (*Id.* at p. 35). The Amended Complaint goes on to state that the policies failed or refused to (1) properly examine inmates with a serious medical condition, (2) provide medication refills to an inmate with a serious medical or condition, (3) provide upon requested medical care or asked to see a doctor, or (4) exhibited obvious signs of a serious medical condition or illness, (5) properly keep adequate medical records, and (6) identify and correct incompetent medical treatment (*Id.*). Nothing talks about vaccinations or preventing an inmate for getting a serious disease—it is all about receiving care for the serious disease. (*Id.*).

Further, the Amended Complaint does not appear to implicate vaccinations when it discusses how the policies or lack thereof harmed Nance. It states "Wexford's policies, procedures, or practices at Menard resulted in the frequent failure to provide inmates

such as Plaintiff with essential medical and treatment and medication refills, despite the fact that it knew that inmates suffered from serious medical conditions." (*Id*. at p. 36). Again, this seems to go to the treatment after being diagnosed with hepatitis B, and not vaccines to prevent hepatitis B.

Looking at Nance's response to the summary judgment motion (Docs. 287 and 288), Nance mentions vaccinations, but it does not appear that he is arguing this is a separate claim. The response sets forth a lengthy introduction which appears to establish Nance's statement of the case. It specifically states: "Mr. Nance *should* have been diagnosed with hepatitis B and examined for cirrhosis in May 2013, when standard blood work indicated abnormal liver function. Then, he *should* have been evaluated for antiviral treatment, which can prevent cirrhosis or stem its progress, and reduce the risk of cancer." (Doc. 288, p. 5). Nothing indicates that Nance is alleging that he should have been prevented from contracting hepatitis B by receiving a vaccination. He alleges that because of the delay in testing for hepatitis B, his diagnosis and treatment was delayed (*Id*.). As to Wexford, Nance specifically states, "Wexford's written policies reflect a purposeful policy to have no policy: during the relevant time period, Wexford omitted key requirements for hepatitis B screening despite authoritative recommendations to the contrary. This let Wexford avoid the costs of diagnosis and treatment of hepatitis B." (*Id*. at p. 6). Again, the focus is on screening and not vaccination.

The Court acknowledges that the responsive brief mentions vaccination, noting that the CDC has found that vaccination is the best way to prevent infection and that the risk of infection is higher among the prison population (*Id*. at p. 7). But the brief then goes

on to discuss regular screening and the failure to diagnose Nance in a timely manner (*Id.* at p. 8). The specific section on Wexford argues that Wexford lacked any policy to diagnose or treat (*Id.* at p. 11). Nance argues there was no policy mandating routine testing of long-term inmates. "As Wexford's corporate witness acknowledged, there was no 'requirement for any hepatitis B testing' and no 'rule or guidance for what to do if there are any elevated liver function tests' contained in these policies." (*Id.* at 26). Nance's argument contains no mention of vaccinations or lack of policy regarding vaccines (*Id.* at pp. 27-28). At no point in the summary judgment briefing did Nance make clear that he was pursuing a vaccination claim which Wexford had not addressed. Nance also had the opportunity to state that he was pursuing a claim regarding vaccination in response to Wexford's motions to reconsider, but he did not raise the issue in either responsive brief (Docs. 308 and 320).

Nance had the opportunity to raise a vaccination policy claim in his Amended Complaint and in all of his responsive briefs to the summary judgment motions and motions to reconsider and failed to do so. Thus, the Court agrees with Wexford that there is not a stand-alone vaccination claim in this case.

### Other Similarly Situated Inmates Claim

Wexford also argues that Nance cannot raise "similarly situated inmates" as part of his claim. The Amended Complaint (Doc. 159) states that Wexford's policies resulted in the "failure to provide inmates such as Plaintiff" with essential treatment (*Id.* at p. 36). Nance also alleges that the policies for "[him] and inmates with serious medical concerns…denied him access to adequate medical care." (*Id.* at p. 35). That seems to be a

fairly typical wording of a policy claim. The policy was applied to all prisoners, and because of that policy, Nance did not receive adequate care.

The Court does not find that Nance is asserting a separate claim on behalf of all inmates as Wexford suggests. As his counsel stated at the final pretrial conference, the claim is about Nance, but the risk and alleged injury to Nance was due to a Wexford policy for all inmates. The evidence and arguments at trial will be limited as such.

**IT IS SO ORDERED.**

DATED:   April 25, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**